[Civ. No. 2589.  Third Appellate District.—December 26, 1923.]

# FRANK FREEMAN, Respondent, v. C. L. DONOHOE et al., Appellants.

[1] PARTNERSHIP—ACCOUNTING—EQUITY.—An action for the settlement of a partnership and its affairs is an equitable action and is to be considered as such in courts of this state.

[2] ID.—REFUSAL OF ACCOUNTING—STATUTE OF LIMITATIONS.—The only statute of limitations that can be pleaded as a bar to an action seeking an accounting and settlement of a partnership, where an accounting and settlement is refused one of the partners, is section 343 of the Code of Civil Procedure.

[3] ID.—PERIOD OF ACCOUNTING PERMISSIBLE.—The statute of limitations does not run between the partners until the accounts are settled and the balance agreed on; therefore, in an action seeking an accounting and settlement of a partnership, where an accounting and settlement is refused one of the partners, the contention that the accounting cannot extend backward for a period of more than two years prior to the commencement of the action cannot be sustained.

[4] ID.—PROPERTIES OF PARTNERSHIP—EVIDENCE.—In this action seeking an accounting and settlement of a partnership entered into for the purpose of buying and selling real estate, while the evidence in regard to the ownership and disposition of certain specified lands was conflicting, there was evidence showing transactions in relation to such lands prior to the dissolution of the partnership and justifying the trial court in determining they were properties of the partnership and subject to an accounting.

[5] ID.—PREPARATION OF ACCOUNTS—BOOKS USED—EVIDENCE.—In an action seeking an accounting and settlement of a partnership, the contention, on appeal, that "evidence was improperly admitted to ascertain the figures upon which the account was made," cannot be sustained, where the evidence shows that the preparation of the accounts was referred to an expert accountant and his report, which over the objections of defendants was almost entirely adopted by the referee and the court, was prepared from

2. Right of partners to plead statute of limitations, note, 104 Am. St. Rep. 755.

3. Running of statute of limitations against action for accounting and settlement after dissolution of partnership, note, Ann. Cas. 1918D, 1107.

5. General rule as to admissibility of partnership books in evidence, note, 52 L. R. A. 833.

the books of the partnership which were kept entirely by or under the direction of one of the defendants and from the books of other associated or controlled companies whose accounts were balanced and compared by, and relied upon, by the partnership.

[6] ID.—DISSOLUTION—PARTNERS AS TRUSTEES.—All the properties, both real and personal, of the partnership having been held in the possession and control of defendants after the dissolution of the partnership, defendants, upon the dissolution of the partnership, became trustees for plaintiff, and being trustees, were at all times during the existence of the partnership and after its dissolution bound to plaintiff in the highest good faith.

[7] ID.—SALES OF PROPERTY AFTER DISSOLUTION—VALUE—EVIDENCE —FINDINGS.—Sales made by defendants after the dissolution of the partnership having put it out of their power to deliver to plaintiff, on the settlement of the partnership affairs, his share of the property sold, the referee was not limited to the taking of evidence and reporting simply an account of the money proceeds from sales, but properly took evidence as to the value of the land at the time of making the sales; and as the evidence was conflicting, the province of determining the valuations to be fixed was one within the jurisdiction of the trial court.

[8] ID.—RIGHT TO CREDITS—PLEADINGS—ISSUES—EVIDENCE.—Where defendants, in response to plaintiff's complaint, did not appear in the action and by their answers submit a report and account of their dealings and transactions on account of the partnership affairs or present anything requiring an examination by the court as to the partnership expenses, but absolutely denied under oath that there had ever been any partnership, and they maintained that position at all times during the trial of the case and until the filing of their opening brief on appeal, defendants were in no position, on appeal, to urge that the trial court committed error in not allowing them credits to which they were entitled.

[9] ID.—DISSOLUTION—JOINT JUDGMENT.—In an action seeking an accounting and settlement of a partnership entered into for the purpose of buying and selling real estate, where the evidence shows that, both before and after the dissolution of the partnership, one or the other of the defendants handled the partnership properties and the proceeds therefrom and had charge of the books, and that plaintiff had nothing to do with this function of the partnership business, and the pleadings of defendants do not seek an adjudication as between themselves, but merely ask that the prayer of plaintiff's complaint be denied and that they recover

---

6. When trust in partnership real estate is created, notes, 27 L. R. A. 468; 28 L. R. A. 98, 100; 37 L. R. A. (N. S.) 899; L. R. A. 1918A, 927.

their costs, a joint judgment against both defendants for the entire amount due plaintiff is not erroneous.

[10] ID.—EVIDENCE—LACHES.—In this action seeking an accounting and settlement of a partnership, the complaint having been filed within four years after the dissolution, by mutual consent, of the partnership, and the evidence having shown, among other things, that plaintiff had endeavored for over a year after the dissolution to bring about an amicable settlement of the partnership affairs and a division of its properties, and the absence of the reasons for which the refusal of relief because of laches is sometimes given in equity, the trial court was justified in determining that plaintiff was not guilty of laches.

APPEAL from a judgment of the Superior Court of Glenn County. H. C. Bell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hankins & Hankins, W. T. Belieu and F. L. Berry for Appellants.

George R. Freeman, Jackson Hatch and F. H. Gould for Respondent.

BARTLETT, P. J., *pro tem.*—By this action the plaintiff seeks an accounting and settlement of a copartnership between himself and defendants, alleged to have been entered into on or about January 1, 1907, and dissolved by mutual consent on or about the first day of June, 1910. The complaint in the action was filed in the superior court of Glenn County, California, on May 26, 1914. An amended answer to the complaint was filed on May 1, 1915. On May 19, 1915, the trial of the action began before the late Judge J. E. Prewett of Placer County, and on July 25, 1921, findings of fact and conclusions of law and judgment in favor of plaintiff and against defendants were filed in the superior court of Glenn County. An appeal from this judgment has been taken by defendants to the supreme court and the matter has been assigned for hearing to the appellate court of the third appellate district.

As alleged in the complaint, a finding was made by the court that a copartnership was entered into between these parties in Glenn County, California, on or about January 1, 1907, with the object and purpose of buying and selling

real estate in California, and particularly in the county of Glenn in said state, and the sale of lands and city lots on commission, and in general, engaging in the conducting of a real estate business therein; that all profits and properties of the copartnership should be acquired equally; that it was agreed by the parties that the partnership business should be conducted under the name of H. J. Barceloux & Company; that in accordance with the agreement a real estate business was opened in the city of Willows, Glenn County, state of California, and business continued therein until on or about June 1, 1910, at which time the partners, by mutual consent, dissolved the copartnership; that no copartnership since said dissolution has existed between the parties, and that no accounting of the partnership business has ever been had between the copartners, save and except the accounting involved in this action.

The trial court found that during the existence of the copartnership its business affairs were conducted continuously by the defendants without consultation on their part with plaintiff; that after the dissolution of the partnership, defendants denied that the relation of partners had ever existed between them and plaintiff, and from the time of dissolution continuously denied such relationship, and retained in their possession all the property of the copartnership, claiming to own the same themselves and claiming plaintiff had no interest therein, and that he had never been a member of the copartnership; and that though requested so to do after the dissolution, appellants refused to recognize plaintiff as a partner, and refused to account to plaintiff for any of the business and transactions that had been had, and excluded plaintiff from any participation in the affairs and business, and any enjoyment of any of the profits and properties of the copartnership.

The trial court also found that plaintiff, after the dissolution, repeatedly demanded an account of the receipts and disbursements of the copartnership, and a one-third part therein which plaintiff claimed to be his, and that defendants at all times refused to in any manner account to plaintiff or to deliver any part of the properties of the copartnership to plaintiff.

By their amended answer defendants, after denying all the allegations of the complaint, set forth, as separate answers

and defenses, one, alleging that the cause of action set forth in the complaint, and the whole of the same, was barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure; another, that the cause of action set forth in the complaint, and the whole thereof, was barred by the provisions of subdivision 1 of section 339 of the Code of Civil Procedure; another, that the cause of action set forth in the complaint, and the whole thereof, was barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, and another, that plaintiff was guilty of laches and unreasonable delay in bringing the action.

The trial court found against defendants on each of the separate defenses interposed, as well as upon the main cause of action.

At every stage of the trial in the superior court the defendants vigorously resisted respondent's claim that a copartnership of any kind ever existed between the parties, as alleged in the complaint; but that such a copartnership existed, they now admit in the briefs, both opening and reply, which they have submitted on this appeal. In the opening brief (pp. 4 and 5) defendants say: "We do not propose to challenge the findings of the court as to the existence of the alleged partnership and will confine ourselves to the points hereinafter set forth"; and in the closing brief (p. 2): "We expressly stated in our opening brief that we did not intend to dispute such finding, although we disputed, and still dispute, that certain properties included in the accounting did not form a part of the partnership assets." This admission of the defendants simplifies, in great degree, the solution of the question presented by this appeal.

The trial of the cause was conducted by Judge Prewett on these lines: First, evidence showing the partnership relation, both oral and documentary was taken. At its close, an interlocutory decree directing an accounting before a referee was made. The referee was appointed and thereupon he heard evidence, oral and documentary, and said referee secured the services of an expert accountant to examine and submit a report on the business transactions from the beginning of the partnership to the time of accounting. The findings of the referee were then reported to the court,

after which the court heard evidence, and a number of objections interposed by defendants to the referee's findings and made and filed an order directing the findings and judgment in favor of the plaintiff involved herein. The interlocutory decree and opinion of the court before referred to will assist in an understanding of the matters and evidence involved in this action, they being as follows:

"Interlocutory Order.

" ...

"In this case it is ordered that the motion of defendants for a nonsuit (having been made after the submission of the case) be and the same is hereby dismissed.

"By this interlocutory order, it is further ordered and adjudged that the plaintiff is entitled to an accounting of the affairs of the partnership described in the complaint, and it is further ordered that such accounting be had.

"It is further ordered that such accounting be had before John Graves, hereby appointed as a referee for that purpose.

"It is further ordered that said referee take evidence and report a finding of facts as to the following properties:

"The Hastings Land, sec. 16; Deveney tract; Bailey tract; Dixon tract; Watt land; Barceloux 320 acres; Iglick land; Rice land; Reager or Rogers land and commissions thereon under contract with Armstrong, Quatman & Co.; also other commissions due from said firm; Glenn County Irrigated Farms and commissions; Kelly lands; Willows Land and Improvement Company's lands, Selby lands; Cartenberg lands, as follows; to wit:

"(a) As to lands heretofore sold, the amount of proceeds arising from such sales;

"(b) As to commissions earned by H. J. Barceloux and Company or by any of the parties to this action, the amount thereof;

"(c) As to any of the above mentioned lands that yet remain unsold, the value thereof and the amounts contributed by each party to the purchase and handling thereof; the amount received by each party in the way of rents or other profits;

"(d) A division of the unsold lands in three parts of equal value and a memorandum of office fixtures and personalty.

"(e) Independently of the matters embraced in the subdivisions of this order marked or designated 'd' the amount due from the two remaining partners to the plaintiff, as may be shown by items 'a' and 'b.'

"It is ordered that the said reference be completed at the earliest practicable date, and duly reported to this Court.

"Done in open court this 22nd day of October, 1915.

"J. E. PREWETT, Judge.

"Filed October 25, 1915."

"Opinion and Order.

"The complaint avers the formation of a partnership between Frank Freeman, C. L. Donohoe and H. J. Barceloux, commencing about the beginning of the year 1908, and terminating about June 1st, 1910.

"The above parties from time to time in various real estate transactions—sometimes each singly, at other times two participating and at other times all three. Whether those transactions in which all three participated constituted partnership transactions or merely joint ventures constitute the principal question for the determination of the Court.

"The relations of the parties appear to be exceptionally strained and the case itself has developed much bitterness. The case is replete with charges of fraud, forgeries, mutilations, erasures, perjury, suppression of evidence, and destruction of books. This Court will make no attempt to determine those matters save as they may necessarily arise in the course of the decision of the case.

"In the year 1907 C. L. Donohoe, H. J. Barceloux and Mr. Gutman formed a co-partnership for the purpose of dealing in real estate. Each partner contributed a small sum for the purpose of starting the business. Near the close of the year Mr. Gutman retired from the business and turned his interests over to Frank Freeman, delivering to the latter his copy of the co-partnership agreement. Mr. Gutman inquired of the remaining co-partners whether or not it was satisfactory for Mr. Freeman to enter the partnership, and was informed by them that it was. Thereupon he informed Mr. Freeman of this fact, and Mr. Freeman claims that he thereupon and thereby entered the partnership.

"Mr. Donohoe and Barceloux insist that upon the retirement of Mr. Gutman the co-partnership was dissolved and was never re-organized. This contention, however, cannot be sustained. Whether or not Mr. Freeman became a member of the partnership, there seems to be no question whatever, and that the firm of H. J. Barceloux & Co. continued to do business for a number of years. It kept a set of books, employed and paid a bookkeeper, rented and maintained an office, paid rent, displayed signs, used letter heads, and handled a vast volume of business. I take it that every resident of Willows during the years 1908 and 1909 would have stated without hesitation that there existed a well known firm transacting business under the firm name of H. J. Barceloux & Co.

"That Mr. Freeman was a member of this firm is not quite so certain, yet the burden of proof very largely predominates in favor of that conclusion. If the evidence of the parties to this action be eliminated, there is scarcely a doubt of it. It seems that practically every fact in the case which does not in any way depend upon the oral testimony of the litigants, tends to show that he was such a partner.

"Exhibits two, three and four (copies) if genuine, establish the plaintiff's case. That they are genuine, must be held by the Court. It is true that they emanate from unfriendly sources, but the manner of their production and especially the testimony of Miss Pierce, tends to show that they are genuine. (Copies of Ex. 2 and 3 and 4 follow this opinion herein.)

"Exhibit one was written on the typewriter usually used by Mr. Donohoe. Examination of the characters '08,' 'a,' 'bar,' and especially the bottom of the letter 'x' show this. The fact that it was so written is not by any means conclusive, but it is a circumstance of much weight. Even if it was written at the instance of the plaintiff, it was written at a time when the parties were very warm friends, and when there existed no temptation to fabricate a case.

"The loss by the defendants of their co-partnership books is an unfortunate circumstance and must be permitted to weigh to some extent against them. It seems quite certain that these books would throw much light upon the question now under review.

"The correspondence between the parties tends to show that the co-partnership existed. Out of the 30 or 40 exhibits, letters offered in evidence, almost all of them emanate from the plaintiff.

"The contention that a settlement was arrived at between the parties in June, 1910, is clearly a mistake. This conclusion seems to be almost mathematical in its certainty, since many of the items included in it did not transpire until long after that date. At most, the defendants are mistaken in their remembrance of the fact.

"Exhibit 15 was given by defendants to plaintiff as a memorandum showing the probable profits of their joint efforts. This exhibit is a very important document in this connection. Not only does it go far to establish the existence of a partnership, but it purports to contain a *résumé* of its transactions and properties. (A copy of Exhibit 15 follows this opinion.)

"Upon the whole, the conclusion seems to be fully established that the co-partnership set out in the complaint was formed at the time stated and that it handled the properties enumerated in Exhibit 15.

"The motion to strike out the answer must prevail for the reason that it was filed without leave of the Court. The evidence as to the stipulation is so conflicting that it must be held that the burden (which admittedly rests upon the defendants) has not been sufficiently overcome.

"Moreover courts are very loath to permit amendments whose purpose it is to plead the Statute of Limitations.

"Let an order be entered striking out the amended answer.

"The case is perhaps in condition for final judgment. Still, if either party wishes to offer any further evidence upon the point as to the properties and values, such party may so indicate within five days and the case will be set down for further hearing as to said point.

"If no such wish be indicated, then the plaintiff will prepare, serve and file proposed findings and decree.

"PREWETT, J."

Nothing appears in the record showing that either of the parties availed themselves of the opportunity to offer further

evidence after Judge Prewett made his order as to findings and judgment, as above set forth.

The judgment entered and from which this appeal is taken adjudges that plaintiff have and recover from defendants jointly and severally the sum of $31,504.85, in lawful money of the United States, with interest thereon from the date of the institution of the action, May 26, 1914, at the rate of seven per cent per annum, making a total of $47,-260.31.

The judgment adjudges and decrees that plaintiff and defendants were copartners. doing a general real estate business in Glenn County, state of California, during the times stated in the complaint and until the dissolution of the partnership on June 1, 1910; that a number of parcels of real properties, particularly described in paragraph 8 of the judgment, was and is the property of the copartnership and that plaintiff, when the action was instituted and when the judgment was rendered, was the owner of an undivided one-third of these real properties and that defendants were and are the owners of the remaining two-thirds thereof: that all of the debts and obligations of every kind of said copartnership from its organization to the time of the accounting and from that time to the giving of the judgment are fully paid, satisfied, and settled; that the partnership did not have when the action was commenced, nor has it had since, nor is it now, the owner of any other property, real, personal, or mixed, other than its profits in the lands above referred to, save and except certain interests in properties which are described in subdivision 6 of the judgment, to which properties described in said subdivision 6 of the judgment plaintiff filed a relinquishment of any right and interest which he might have, renouncing all claims of every kind and nature thereto and consenting that the same be awarded by the judgment to the defendants, and the same were so awarded.

The judgment further created a lien against the defendants in favor of plaintiff upon and against all the right, title, and interest of the defendants, and, each of them, in and to the unsold real property, which was undisposed of and described in paragraph 8 of the judgment, to secure

the payment of the money judgment in favor of the plaintiff rendered in the action.

The unsold partnership real property is fully described and set forth in paragraph 8 of the judgment, and these properties are directed to be sold, either as a whole or in separate parcels, by the sheriff of the county of Glenn, who is appointed a commissioner and invested with the legal title to said real property and directed to sell the same as a whole, or in separate parcels as he might determine to be to the best interests of the parties at public sale, at a time to be fixed by the commissioner within ninety days from the entry of the judgment, upon notice of at least fifteen days, and that at the sale any of the parties to the action might become a purchaser of any part thereof, and directing the commissioner to acknowledge and deliver deeds by the commissioner, conveying to the purchasers of the properties all the right, title, and interest of the copartnership and of the plaintiff and defendants in and to said properties upon receipt of the purchase prices from the purchasers, and directing that the commissioner retain out of the proceeds received by him costs, charges, and expenses paid out and due him and the payment of the remainder of said proceeds to the clerk of the trial court, said clerk to pay to the plaintiff one-third of the net proceeds for and on account of his one-third interest in such properties and so much of the remaining two-thirds of these proceeds as may be necessary to the liquidation of any liens remaining unpaid at that time on the judgment; said clerk to thereupon enter in the judgment-book of the court in which the judgment is recorded a credit of the amount of money paid to plaintiff representing the two-thirds interest of the defendants and the clerk to pay to the defendants any proceeds remaining after the payment ordered made to the plaintiff. The judgment also adjudges and decrees that the plaintiff recover his costs, which were taxed at the sum of $731.85. The judgment is dated July 19, 1921, and signed by J. E. Prewett, as Judge, and indorsed as filed July 25, 1921, by W. H. Sale, county clerk.

Exhibit 15, referred to in the opinion and order of Judge Prewett, hereinbefore set forth, is as follows:

"Report on Barceloux & Company business to date showing profits actually earned and values made in purchase of land, and commissions for sales, as follows:

|  | Profit |
|---|---|
| Eibe land, 160 acres $60.00 per............ | $4000.00 |
| Hastings land, Section 16................ | 6000.00 |
| Deveny Tract ......................... | 5000.00 |
| Bailey Tract ......................... | 9000.00 |
| Dixon Land ........................... | 4800.00 |
| Watt Land ........................... | 3000.00 |
| Barceloux 320 acres..................... | 1600.00 |
| Winkler land $150 an acre offer made....... | 6800.00 |
| Iglick land ........................... | 1037.75 |
| Rice land ............................ | 1272.00 |
| Reager or Rogers land under contract with Rogers ............................ | 1333.33 |
| Commissions in sale of Rogers tract under contract with Armstrong-Quatman Co. 5% | 5000.00 |
| Commission from Armstrong-Quatman Co. on land already sold at Orland............ | 3360.00 |
| Commissions G. C. Irrigated Farms......... | 1800.00 |
| Commissions on options for Pittsburg Syndicate ............................ | 9000.00 |
| Kelly Land ........................... | 800.00 |
| Profit in Willows Land & Improvement Co. at what it can be sold for today........ | 7500.00 |
|  | $71,303.08 |
| In addition the members of Barceloux & Co. have a united interest in the Irrigated Farms Company land of the value of... | 7,500.00 |
| Profit in Colby Land to Barceloux......... | 5700.00 |
| To Donohoe and Freeman each............. | 3900.00 |
| In addition to the above the contracts now under contract with Armstrong-Quatman Co. for sale of land at Orland not yet sold, exclusive of Rogers tract will net Barceloux & Co. when sold............ | 10000.00 |
|  | 27,100.00 |
|  | $98,403.08 |

"The above figures are made either on Sales actually consummated or values fixed on *bona fide* offers to buy, and the figures show a profit over and above all liabilities.

"Dated this 23rd day of November, 1909."

Exhibit "1," referred to in Judge Prewett's opinion and order for findings and judgment, hereinbefore set forth, is as follows: (Plaintiff's Exhibit One.)

"Know all men by these presents: That H. J. Barceloux, G. A. Gutman, and C. L. Donohoe, all of the County of Glenn, State of California, have this day associated themselves together as co-partners, and by these presents do agree to become co-partners in business together, under the firm name and style of H. J. Barceloux & Co., in the business of buying and selling real estate and personal property in the State of California, and in doing a general insurance business in the County of Glenn, State of California. This partnership is to commence on the date hereof and to continue until hereafter dissolved by mutual consent, operation of law or judgment of a court, and it is agreed that at all times during their co-partnership that they shall and will bear, pay and discharge equally between them all rents and other expenses that may be required for the support and management of the said business; that all gains, profits and increase that shall come, grow, or arise from or by means of said business shall be divided between them share and share alike, and that all loss that shall happen to their joint business by bad debts or otherwise shall be borne and paid equally between them.

"In witness whereof, the parties have hereunto set their hands and seals this 2nd day of March, 1907.

> "CHARLES L. DONOHOE.
> "G. A. GUTMAN.
> "H. J. BARCELOUX."

The statement of Judge Prewett, "in the year 1907 C. L. Donohoe, H. J. Barceloux and Mr. Gutman formed a co-partnership for the purpose of dealing in real estate. Each partner contributed a small sum for the purpose of starting the business. Near the close of the year Mr. Gutman retired from the business and turned his interests over to Frank Freeman, delivering to the latter his copy of the copartnership agreement. Mr. Gutman inquired of the remaining copartners whether or not it was satisfactory

for Mr. Freeman to enter the partnership, and was informed by them that it was. Thereupon he informed Mr. Freeman of this fact, and Mr. Freeman claims that he thereupon and thereby entered the partnership,'' is a clear and concise statement, fully supported by the evidence as to the inception and creation of the formation of the copartnership involved herein.

G. A. Gutman was examined as a witness at the trial of the action and his evidence shows that, prior to the transfer to Mr. Freeman of his interest, some business in the way of insurance and commissions had been transacted by himself and the defendants under the copartnership.

In their able and elaborate opening brief on this appeal, appellants urge the following grounds for reversal: 1. The plaintiff's right to an accounting was barred by the statute of limitations; 2. Even if the plaintiff's right to an accounting was not barred by the statute, the accounting could not extend backward for a period of more than two years prior to the commencement of the action; 3. The accounting improperly included therein transactions not the subject of accounting between the parties; 4. Evidence was improperly admitted to ascertain the figures upon which the accounting was made; 5. The referee and the expert accountant considered and passed upon matters not within the scope of their authority; 6. The court erred in not allowing defendants credits to which they were entitled; 7. The court failed to charge the plaintiff with moneys with which he was properly chargeable; 8. The valuation of certain properties disposed of after dissolution should have been made as of the time of the same being acquired or of dissolution and not as of disposition, and the values found by the referee were against the weight of the evidence; 9. The judgment is erroneous in that it is a joint judgment against both defendants based upon an accounting which fails to show that such defendants jointly received or were jointly responsible for the amount in respect of which the judgment was rendered; 10. The judgment is erroneous in that it is a joint judgment against both defendants, whereas the evidence shows that some of the moneys included in the judgment were received by one of the defendants alone; 11. The judgment is erroneous in that there is no finding that either defendant was a constructive trustee; 12. The

findings of the court and referee were erroneous and also fail to justify the judgment; 13. Plaintiff was guilty of laches.

Because of this being an action in equity and not one at law much of the argument of counsel for appellants and the authorities cited do not uphold the positions which they urge as reasons for the reversal of the judgment. A mistaken idea is often entertained and asserted that, under our system of code pleading, there is no longer a distinction between actions of a legal and those of an equitable character, such as formerly prevailed when separate courts of law and equity obtained. The provisions of section 4, article VI, of the constitution of the state providing that the supreme court should have appellate jurisdiction of appeals from the superior court in all cases in equity, except such as arise from justices' courts; that the district court of appeal "shall have appellate jurisdiction in all cases, matters and proceedings pending before the supreme court which shall be ordered transferred by the supreme court to the district courts of appeal for hearing and decision," and section 5 of article VI of the constitution providing that "the superior court shall have original jurisdiction in all cases in equity and in all cases at law which involve the title of real property, etc.," of themselves, show the recognition of a distinction in the legal and equitable proceedings in actions brought on for trial in the superior courts of the state. [1] There can be no question that an action for the settlement of a partnership and its affairs is an equitable action and to be considered as such in the courts of this state. In the case of *Marston* v. *Kuhland,* 2 Cal. App. 316 [84 Pac. 357], the court said: "This is an action for the enforcement of a trust and for an accounting. The appeal is taken directly to this court. By section 4, article VI, of the constitution of the state, 'appellate jurisdiction on appeal from the superior courts in all cases in equity, except such as arise in justices' courts,' is given to the Supreme Court. By the same section and article of the constitution it is provided that 'no appeal taken to the Supreme Court or to a District Court of Appeal shall be dismissed for the reason only that the same was not taken to the proper court, but the cause shall be transferred to the proper court upon such terms as to costs or otherwise as may be just, and

shall be proceeded with therein as if regularly appealed to.'
In perfecting the appeal, these provisions of the constitution
were doubtless overlooked by appellant. When the cause
was argued and submitted here it was assumed by the court
that it was here by order of reference of the Supreme Court,
the notice of appeal not having been called to our attention.
The case is clearly one 'in equity'· and is appealable only
to the Supreme Court, which alone has jurisdiction in the
first instance.'' It is clear that an action for an account-
ing of a partnership is an action in equity, for it is beyond
question that it is an action to carry out a trust arising
because of the provisions of section 2410 of the Civil Code,
"the relations of partners are confidential. They are trus-
tees for each other within the meaning of chapter 1 of the
title on trusts, and their obligations as such trustees are de-
fined by that chapter.''

''Where a fiduciary relation exists between parties, and
the duty rests upon the defendant to render an account to
the plaintiff, equity will entertain jurisdiction of a suit for
an accounting, although the account is neither mutual nor
complicated. The most common of such cases are those in-
volving trustees, guardians, executors and administrators,
partners, agents and cotenants. Although it is the trust
relation involved in such cases which gives jurisdiction to
a court of equity, the relation need not be the strictly tech-
nical relation of trustee and *cestui que trust*, a *quasi* rela-
tion being sufficient.'' (Pomeroy's Equity Jurisprudence,
2d ed., sec. 2358.) '' . . . The equitable jurisdiction is
also practically exclusive in proceedings for an account and
settlement of partnership affairs, including suits for an ac-
counting and settlement of the firm affairs between the co-
partners themselves; suits for a settlement of the firm
affairs between the survivors and the executors or admin-
istrators of the deceased, when a partner has died; and
suits to settle the affairs of an insolvent firm and to adjust
the demands of the firm creditors and the creditors of the
individual partners. The equitable jurisdiction over part-
nerships is a necessary outgrowth of the jurisdiction over
accounting, and the remedies of dissolution, injunction, and
receivership are incidents necessary to a final and complete
relief.'' (Pomeroy's Equity Jurisprudence, 2d ed., sec.
2362.) Subdivision 1 of section 339 of the Code of Civil

Procedure, under which appellants claim plaintiff's action is barred, reads: "Within two years, 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, other than that mentioned in subdivision 2 of section 337 of this code, . . ." does not authorize defendants' contention that plaintiff is barred from any relief by the provisions of this section. Neither can his contention be upheld that plaintiff's cause of action was barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, which provides that an action must be commenced within three years where it seeks relief upon the ground of fraud or mistake and that a cause of action in such case is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. It is clear that the section regarding limitations applicable toward actions such as that now before the court is section 343 of the Code of Civil Procedure, which is as follows: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

[2] While this court is satisfied that the only statute of limitations that can be pleaded as a bar to an action seeking an accounting and settlement of a copartnership is the above section where an accounting and settlement is refused one of the partners; there is the further statute of limitations contained in section 337 of the Code of Civil Procedure, which provides that any action upon any contract, obligation, or liability founded upon an instrument in writing may be brought within four years, which, under the facts in this case, would overcome any pleas of the action being barred as the original agreement out of which this case arises was the partnership agreement in writing made among Gutman, Donohoe, and Barceloux, the organization thereunder of the firm of H. J. Barceloux & Co., and the subsequent transfer of the interest of Gutman in such partnership to the plaintiff with the consent of the two other members, Donohoe and Barceloux, the defendants herein.

The distinction between cases at law and those in equity has been drawn in a number of instances by the supreme court of this state from a very early period. In *Barnstead v. Empire Mining Co.*, 5 Cal. 299, it was held that one partner could not sue the other in an action at law. The

65 Cal. App.—6

remedy is by bill in equity for a dissolution and an accounting. In *Wheeler* v. *Farmer*, 38 Cal. 203, it was held that no action at law can be maintained, nor can an attachment be sued out by one partner against another for any money involving partnership affairs. In *Ross* v. *Cornell*, 45 Cal. 133, it was held that one partner retiring from a firm cannot be sued for money alleged to be due in partnership transactions until there has been a final settlement of firm accounts and a balance has been struck. In *Gleeson* v. *White*, 34 Cal. 258, it is held that the relation of debtor and creditor between the surviving partner and the representative of a, deceased partner does not arise until the affairs of the copartnership have been wound up and the balance struck, and this balance is to be struck after all the partnership affairs have been settled and not while they are being wound up. In *Pico* v. *Cuyas*, 47 Cal. 174, it is said: "For a lessor of a hotel after a lease is made entering into a contract of partnership with the lessee in keeping the same, the lessor cannot sue at law for the rent reserved in the lease but must sue in equity for a partnership accounting." In *Fisher* v. *Sweet*, 67 Cal. 228 [7 Pac. 657], it is held that a partner cannot maintain an action against his copartner to recover his proportion of the partnership proceeds until the accounts of the firm have been settled. In *Dukes* v. *Kellogg*, 127 Cal. 563 [60 Pac. 44], it was held that a partner cannot sue his copartner in an action at law unless an accounting and settlement of the partnership accounts is alleged in the complaint.

The issuance of the writ of *supersedeas* in the case at bar by the supreme court of California, reported in 188 Cal. 170 [204 Pac. 593], and the suspension thereby of the bond in double the amount of the money judgment to stay the issuance and levy of an execution as would be required in the case of the ordinary legal action has arisen through this case requiring a special equitable procedure to carry out the judgment and strongly illustrates the distinction which obtains between actions of a legal and equitable nature.

While statutes of limitation must be heeded in actions in equity and the period of time therein specified within which actions may be brought regarded as in legal actions, they are not specially favored and esteemed, as are those great principles of equity which have developed through the cen-

turies. Statutes of limitation have well been denominated "statutes of repose." There are actions where it is salutary to invoke their aid. But, as said by the trial court in this case, in his order for findings and judgment, hereinbefore set forth, "moreover, courts are very loath to permit amendments · whose purpose it is to plead the statute of limitation." That section 343 of the Code of Civil Procedure is the statute of limitation applicable in the courts of this state in all cases involving the settlement of all the affairs of a copartnership whose existence is denied and an accounting required is clearly established by the decisions in a number of instances by the appellate courts of California.

The case of *Piller* v. *Southern Pac. Co.*, 52 Cal. 42, is considered and discussed by counsel for both appellants and respondent in their briefs. That was a personal action for negligence, brought over two years after the injuries were suffered. Claim was made that section 343 of the Code of Civil Procedure applied instead of section 339 of the Code of Civil Procedure, subdivision 1. The court held that the action, being one at law, subdivision 1 of section 339 governed, saying: "We are of opinion that the two years' limitation found in the first clause of the first subdivision of section 339 is applicable to all actions at law not specifically mentioned in other portions of the statute. We say actions at law advisedly, since section 343 fixes the time within which certain bills in equity may be filed. In arriving at the intent of the lawmakers, as expressed in the statute, it is proper to consider the history of legislation in respect to the same subject in our own state, and in the country from which our laws are in the main derived. The English statutes of limitations were not, by their terms, applicable to suits in equity, because the words used applied only to particular legal remedies. It was at one time much discussed whether courts of equity acted in analogy to, or were within the spirit of, the statutes, and so, in a sense, acted in obedience to them; it is certain, however, that, except in cases of concurrent jurisdiction, courts of equity acted only in analogy to the limitations at law.

"While by our code all distinctions in pleading between suits at law and in equity are abolished, the different forms of declaration at the common law existed so long, and

became so ingrained in the legal habit of thought, that the very codifiers themselves have been contented to copy the provisions of the English statutes in respect to personal actions, sometimes substituting for the technical names employed in those statutes what was supposed to be their equivalent in ordinary English. Thus reading the statute, the four years' limitation of section 343 applies to all suits in equity not strictly of concurrent cognizance in law and equity.''

In *Dorr* v. *Thornburg,* 90 Cal. 64 [25 Am. St. Rep. 100, 27 Pac. 30], which was a case brought upon a foreign judgment, it was held that it was not barred by the statute of limitations within two years under section 339 of the Code of Civil Procedure, but falls within the provisions of section 343, representing actions not otherwise provided for, and is not barred by the statute until four years after the cause of action has accrued. In *West* v. *Russell,* 74 Cal. 544 [16 Pac. 392], which was an action brought by the administrator of an estate against the administrator and heirs of an estate for an accounting of property and for a judgment directing the delivery of certain properties to the plaintiff, it was held that the statute of limitations under which the demurrer to the complaint was sustained was section 343 of the Code of Civil Procedure, and that the same barred the relief asked, many years in excess of four years having elapsed before the commencement of the action. In the case of *Rowe* v. *Simmons,* 113 Cal. 688 [45 Pac. 983], which was an action to dissolve an alleged partnership, the statute of limitations was pleaded and the court found that the cause of action set forth in the amended complaint was barred by the provisions of section 343 of the Code of Civil Procedure. In *McArthur* v. *Blaisdell,* 159 Cal. 604 [115 Pac. 52], an action for an accounting, alleging the existence of a partnership between parties and in which the trial court found that the cause of action set forth in the amended complaint, was barred by the provisions of sections 337 and 339 of the Code of Civil Procedure. In reversing the same it was held that, as the complaint alleged that the contract was completed on July 21, 1899, which was the basis of the action, and which was not denied, the cause of action having been begun on July 20, 1903, it was not barred, citing Code of Civil Procedure, section 343. In *Allsopp* v. *Joshua*

*Hendy Machine Works,* 5 Cal. App. 228 [90 Pac. 39], an action for an accounting between the agent and the principal, it was held that the statute of limitations applicable was section 343 of the Code of Civil Procedure.

It is clear that plaintiff's right to an accounting in this case is not barred by any statute of limitation of the state of California.

[3] The contention that "even if the plaintiff's right to an accounting was not barred by the statute, the accounting could not extend backwards for a period of more than two years prior to the commencement of the action," cannot be sustained.

The doctrine in this regard is as given in the case of *Hendry* v. *March,* 75 Cal. 566 [17 Pac. 502]: "The statute of limitations does not run between partners until the accounts are settled and the balance agreed on." It must be borne in mind that the accounting in this case is an accounting of the affairs of a copartnership in an equitable proceeding and that in the term accounting in such action is included many things that would not be included in that term if the account were a legal one based upon the transactions of merchants in the ordinary affairs of trade, or on a mutual, open, and current account in which the charges and credits might consist of something other than mere money charges. Here the matters in dispute were not only moneys, but of interests in lands and other matters for adjudication and settlement. The trial court in the interlocutory decree directing an accounting orders and adjudges that the plaintiff is entitled to an accounting of the affairs of the copartnership described in the complaint and orders that such accounting be had. It does not limit the account to any fixed period of time preceding the bringing of the action. The purpose of the account was to arrive at a balance ascertained from the time of the creation of the partnership to the time of the conclusion of the taking of evidence by the referee, or by the court, if further evidence were required.

Appellants' authorities which they cite do not support their claim that no items can be included in a partnership account which precedes the period prescribed by the statute for the recovery on ordinary accounts. Great reliance is placed by them on *Flynn* v. *Seale,* 2 Cal. App. 665 [84 Pac.

263], and *Hamilton Brass Co.* v. *Barr Cash, etc.*, 38 Can. S. C. R. 216. In the case of *Flynn* v. *Seale, supra,* the partner defendant, Seale, had paid out moneys to a bank for the purpose of liquidating and discharging an obligation of his to the bank, which was his individual obligation under the terms of the partnership contract. The court held "an undivided obligation is not a matter of set-off to a partnership claim or to a claim by the plaintiff in a representative capacity; nor can a partnership debt be a set-off to a claim by one of the members of the partnership." In the case of *Hamilton Brass etc. Co.* v. *Barr Cash, etc., supra,* an examination of the decision discloses that the relation of the parties was that of agency instead of partnership and that quarterly reports and accounting of sales were agreed to be made and divisions of the profits made thereon, and the right to sue existed from the time these profits were determined at the end of each quarter. The court holds the relation was not in the ordinary sense a partnership, and it also holds that if questions of fraud were involved the statute of limitations would not be applicable even in the action on the account the supreme court of Canada was discussing.

The case of *Carter* v. *Canty,* 181 Cal. 749 [186 Pac. 346], has no application as the action involved merely the ascertaining of a balance of account on a claim for legal services and payments in money made on the claim. No partnership matter was involved.

[4] The appellants' contention that "the accounting improperly included therein transactions not the subject of accounting between the parties" cannot be upheld under the evidence introduced before the referee and the court. The determination of the sufficiency of the same was a matter peculiarly within the province of the trial court. The evidence in regard to the ownership and disposition of what are described as "Willows Land and Improvement Company's Lands," the "Bailey" land, the "Rogers" land, and "Carttenberg" land, is conflicting, but there is evidence showing transactions in relation to these lands prior to the dissolution of the partnership and it has been determined by the trial court on the evidence introduced that they were properties of the partnership and subject to an accounting in this action.

[5] Appellants' contention that "evidence was improperly admitted to ascertain the figures upon which the account was made" cannot be sustained. The evidence shows that the preparation of the accounts was referred to an expert accountant and in the trial court objection was made to the admission of the account on the various grounds of irrelevancy, immateriality, and incompetency and these objections were heard and considered by the trial court and overruled and the report admitted and almost entirely adopted by the referee and the court. The records used by the expert from which he made his report were the books of Barceloux & Company and those of the Armstrong-Quatman Company. The Armstrong-Quatman Company conducted the San Francisco end of the business, in which they were interested with the firm of H. J. Barceloux & Company.

The books which the accountants examined were the books of the partnership during the time of its existence and after its dissolution up to the time of the accounting. Also the books of the Sacramento Valley Realty Company, which were controlled entirely by the defendants in this case from the time of its incorporation up to the time of the accounting, also books of the Armstrong-Quatman Company, in which were kept a good portion of the accounts as to land subdivisions involved in this action and commissions earned and which accounts were balanced and compared by Barceloux & Company and relied upon by Barceloux in all such matters, Barceloux being the member of the firm in charge of the books of account of H. J. Barceloux & Company. The books of the firm both before and after the dissolution of the partnership were kept entirely by the defendants, or under their supervision, the plaintiff had nothing to do with their keeping nor with the management of the properties, and all the properties, both real and personal, of the partnership were after the dissolution of the copartnership held in the possession and control of the defendants.

[6] The two defendants upon the dissolution of the copartnership became trustees for the plaintiff, and being trustees, were at all times during the existence of the partnership and after its dissolution bound to the plaintiff in the highest good faith.

The rule relative to the duties of trustees as to keeping proper books of account and the rendering of full accounts of their dealings with the trust funds is clearly announced in the case of *Purdy* v. *Johnson,* 174 Cal. 521 [163 Pac. 893], where it is said that "trustees are under the obligation to render to their beneficiary a full account of all of their dealings with the trust funds and where there has been a negligent failure to keep true accounts, or a refusal to account, all presumptions will be against the trustee upon a settlement." The case of *Roberts* v. *Eldred,* 73 Cal. 394 [15 Pac. 16], which was a case for dissolution of a copartnership and accounting, disclosed a condition of the books of account such as compelled the preparation of books prepared by experts who were employed by the referee and which books were made up of imperfect books kept by the defendant in the case. Speaking of the books kept by the defendant, the court, on page 396 of the opinion, said: "Many of the accounts which he did keep were false, and credit was not given to plaintiff in cases where it ought to have been. It will not do for defendant to take refuge behind such books as these. If the result which the referee and the court arrived at was not correct, the record should have made the error appear. The only thing which is clearly apparent from this record beside the misconduct of the defendant is hopeless confusion in the accounts. It is eminently a case where the action of the court below should not be disturbed."

[7] The contention of appellants that "the referee in the said accounting considered and passed upon matters not within the scope of his authority" cannot be sustained. They insist that under the interlocutory decree specifying the respective portions of land in respect to which the account was to be made limited the referee to the taking of evidence and reporting simply an account of the money proceeds from sales. The report of the referee shows that his valuations on some of the lands involved was based upon evidence taken before the referee showing what the value of the land was at the time of the making of the sales. The sales made by the defendants after the dissolution put it out of their power to deliver to the plaintiff on the settlement of the partnership affairs his share of the property sold, and it would appear that the only methods of de-

termining what was the interest of plaintiff in those proper-
ties, of which he was deprived through the sale, would be
the value thereof at the time of the making of the sale.
As to the evidence taken for the purposes of determining
the value of these lands sold, the province of determining
the valuations to be fixed was one within the jurisdiction
of the trial court, it being based on conflicting evidence.
[8] Appellants urge that the court erred in not allowing
defendants credits to which they were entitled. Had de-
fendants, in response to plaintiff's complaint, appeared in
the action and by their answers submitted a report and ac-
count of their dealings and transactions on account of the
partnership affairs, as it was their duty to so do, they would
then be in a position to complain of the action of the trial
court. This they did not do, but, on the contrary, denied
there were any partnership affairs to adjudicate.

In relation to the contention of defendants that the neces-
sary expenses incurred by partners and trustees in relation
to the management of property entrusted to their care, or
over which they had control, are ordinarily allowed in
proper cases, it may be said that this rule is applicable in
cases of accountings made by honest and faithful members
of a copartnership. These defendants absolutely denied
under oath that there had ever been any partnership exist-
ing between them and the plaintiff and they maintained
this position at all times during the trial of this case and
until the filing of their brief in this court. From the time
of the dissolution of the copartnership they denied that
plaintiff had any interest whatever in any of the properties
included in the accounting. The report of the expert set
forth in the appendix to appellants' opening brief shows
that no exceptions were taken to the expert's report on the
Deveny tract, in which there were net profits of $4,750.34,
of which plaintiff's share was $1,583.45, of the Dixon tract
on the property of which there was due plaintiff $509.43,
of the Watt tract, in which the plaintiff was entitled to
profits of $1,177.54, of the Rice land in which plaintiff's
share of profits was $424.00, of the Kelly land in which
plaintiff's share of profits was $423.17, and the Selby lands
in which plaintiff's share of profits was $1,238.89, and net
commissions from various transactions, of which plaintiff's
share of profits was $917.98. Their answer to plaintiff's

complaint denied the having of any moneys or properties of plaintiff in their hands.

Having failed to present anything in any way of an answer to plaintiff's complaint requiring an examination by the court into the transactions on behalf of the defendants with the partnership which would show the amount of moneys expended by them and with which they should be charged in the settlement of any account, they are not now in a position to claim error on behalf of the trial court in not allowing defendants credits to which they were entitled, if there are any to which·they were entitled. They did not even avail themselves of the opportunity afforded to offer any evidence they desired to produce by virtue of the order allowing further time to submit further evidence, if they so desired, made by the trial judge when he directed findings and judgment in this case.

[9] There is no merit in the contention of appellants that the judgment is erroneous because it is a joint judgment against both defendants based upon an accounting which fails to show that such defendants jointly received or were jointly responsible for the amount in respect of which the judgment was rendered. The matter of showing how the moneys were received by defendants, and the amounts and disposition of the same, was peculiarly within the knowledge of the defendants. They handled the partnership properties and proceeds therefrom, had charge of the partnership accounts, and plaintiff had nothing to do with this function of the partnership business. If defendants desired in this action a settlement of its affairs between themselves they could have secured such adjudication through proper pleadings admitting the partnership relation and setting forth the transactions and asking the proper relief. The only relief they sought by their answer was, ''that the prayer of plaintiff's complaint be denied in whole and that the defendants have judgment for their costs.''

The case of *Eisentraut* v. *Cornelius*, 134 Wis. 532 [126 Am. St. Rep. 1027, 115 N. W. 142], cited by defendants, does not uphold the contention, but, on the contrary, shows that the procedure taken and followed in that case was along the lines above suggested.

The contention that the trial court failed to charge plaintiff with moneys with which he was properly chargeable is not sustained by the evidence. Defendants claim that at the time of the dissolution of the partnership there was due from one C. M. Wooster $15,737.24 commissions earned by the partnership and that defendants sued to collect this sum, making plaintiff a party defendant because he would not join with them in the action. Plaintiff afterward, defendants claim, compromised the action and accepted $7,240.80 as a consideration of the compromise. Defendants dismissed the action, plaintiff paid part of the moneys received by him to the defendant Donohoe, and a settlement and adjudication as to these moneys is contained in finding No. XI of the trial court. As to whether the amount of these commissions was $15,737.24, as claimed by defendants or $7,240.80, the evidence was conflicting, and the statement (Exhibit 16) made by the defendant Donohoe to plaintiff makes as the estimate of profits in this matter $9,000 instead of $15,737.24. Under the rules applying to findings of trial courts on conflicting evidence, it cannot be said that the matter of the Wooster commissions was not properly settled by the trial court.

The claim that the judgment is erroneous because of being a joint judgment against both the defendants and that the evidence shows that some of the moneys included in the judgment were received by one of the defendants alone cannot be upheld. Defendants, had they admitted the partnership in this action and alleged by appropriate allegations in separate answers, if there was a dispute between them, or in a joint answer if they were agreed upon the balances as to moneys and properties of the partnership in their hands, might have obtained a decree settling all the affairs of the partnership between the individual partners. By their answer denying a partnership they precluded the determining of the liabilities of defendants Donohoe and Barceloux each to the other. What is adjudged by the decree to belong to plaintiff is his share of the properties of the partnership, determined to be in the custody and control of both defendants; they did not at the trial of the action by any pleading ask that the court determine the condition of the partnership moneys and properties as between the defendants Donohoe and Barceloux; and if there exist any differences in

these regards those are matters for settlement either in proceedings after the partnership properties are sold in this action regarding any proceeds, if any there be, after settling the plaintiff's judgment or by any such action as may be proper between the defendants Donohoe and Barceloux relating to the properties and moneys in their hands.

The rule as to when it is proper for the rendering of a joint judgment against partners in suits for accounting is clearly stated in *Bloomfield* v. *Buchanan,* 14 Or. 181 [12 Pac. 238]: "In an ordinary accounting between partners where neither is guilty of such acts, omissions, or concealments as involve a breach of legal or equitable duty, trust, or confidence justly reposed, and which are injurious to another, or by which an undue or unconscientious advantage is taken of another, the rule of liability is that each partner is liable to account to each other severally but not jointly. But an examination of the evidence in this case has satisfied us that that rule could not be applied here. Whatever may be the general relations between partners, the facts developed in this case make it fiduciary and the principles of law applicable to that relation must be applied."

In this state partners are trustees for each other within the meaning of chapter 1 of the title on Trusts contained in the Civil Code, and their obligations as such trustees are defined by that chapter.

"A trustee is responsible for the wrongful acts of a cotrustee to which he consented, or which by his negligence, he enabled the latter to commit, but for no others." (Civ. Code, sec. 2239; Perry on Trusts, sec. 848; *Birmingham* v. *Wilcox,* 120 Cal. 467 [52 Pac. 822].)

"The rule is firmly settled that where a breach of trust has affected two or more or all of cotrustees with a common liability, they are liable jointly and severally; each is liable for the whole loss sustained or the whole amount due, and a decree obtained against them jointly may be enforced against any one of them." (Pomeroy's Equity Jurisprudence, 4th ed., sec. 1081; *In re Thompson,* 101 Cal. 349 [35 Pac. 991, 36 Pac. 98]; *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474 [111 Pac. 360].)

As a trust relation between the parties was created by the provisions of the Civil Code hereinbefore set forth, the

argument of the appellants that the court should have made a finding that the defendants were constructive trustees is without merit in view of the facts shown by the evidence in this case.

[10] The contention of appellants that plaintiff was guilty of such laches as should defeat his action cannot be sustained. The evidence discloses attempts on the part of plaintiff for over a year after the dissolution to bring about an amicable settlement of the partnership affairs and division of its properties; of a written request for a report of the partnership affairs; of the writing soon thereafter by the defendant Donohoe to one W. S. Armstrong, who was in charge of the Armstrong-Quatman Company, in San Francisco, a letter as follows:

"Henry and myself are having some difficulty in affecting an adjustment of our affairs with Freeman, and I wish you would refrain from giving Freeman or anyone else any information concerning our past transactions should they apply to you in the way of oral statements, written statements or copies of papers or inspection of papers which you may have"; and the absence of the reasons generally for which the refusal of relief because of laches is sometimes given in equity. Delay in bringing the action is the main reason urged by defendants for applying the doctrine of laches.

"There is no artificial or hard-and-fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. The question must be determined by a consideration of all the facts and circumstances of the particular case. Laches is a question of fact, on the evidence, and each case becomes largely a law unto itself. In other words, the matter is one which reposes in the sound discretion of the chancellor." (10 Cal. Jur., sec. 64.)

Speaking of this rule and its application, it is said in *Pratt* v. *Pratt*, 43 Cal. App. 261 [184 Pac. 956]: "A large discretion is confided to the trial judge, and the disposition of an appellate court is, and should be, to respect that discretion and not to interfere with his conclusion unless manifestly an injustice has been done." In all matters involved in this appeal the determination of the questions presented were peculiarly within the hands of the trial

judge for the solution of the facts.  The findings and decree are supported by the evidence introduced.

No sufficient reason has been presented by appellants for a reversal of the judgment appealed from in this action, and said judgment is, therefore, affirmed.

Hart, J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1924, and the following opinion then rendered thereon:

THE COURT.—We do not approve that portion of the opinion of the district court of appeal herein which seems to hold that this action may be regarded as upon a contract, obligation, or liability founded upon an instrument in writing.  We are satisfied with the conclusion of the district court of appeal to the effect that the statute of limitations applicable to the case at bar is the one prescribed in section 343 of the Code of Civil Procedure.

The petition for transfer to and hearing by this court is denied.