[Civ. No. 19876.   Second Dist., Div. Two.   Apr. 8, 1954.]

HAGOP N. DANELIAN et al., Respondents, v. GEORGE A. McLONEY et al., Appellants.

Harold L. Green for Appellants.

Irsfeld & Irsfeld and James B. Irsfeld, Jr., for Respondents.

MOORE, P. J.—Defendants demand reversal of a judgment for damages for breach of a contract of joint venture. They have specified their assignments of error, each of which shall in its turn be answered. The amended complaint alleges two grounds for recovery, to wit, (1) losses sustained as a "result of the sale of the properties" and (2) "damages caused by the refusal of appellants to pay the money required by the agreement to be paid by them."

### LIABILITY ESTABLISHED BY FAIR CONSTRUCTION OF CONTRACT

Prior to October 31, 1946, appellants held options to purcase two contiguous parcels of real property in San Fernando Valley. On that day, they entered into a contract with respondents for the purchase of the acreage on substantially the following terms:

1. Respondents to make the down payments on both parcels, totaling $26,000 plus escrow expenses, and to take title in their names.

2. Appellants to pay taxes, public utility assessments and principal payments on the two trust deeds until appellants have paid a total of $26,000.

3. When appellants have advanced $26,000, respondents are to convey an undivided one-half interest in the properties to appellants.

4. All subsequent payments and expenses to be paid equally by both parties.

"5. Any profits arising from the sale of part or all of the above described property are to be divided equally between parties of the first and second part after deducting from the proceeds of such sale all cash advanced of the first [appellants] and second [respondents] parties."

"6. Any losses arising from the sale of above described property are to be divided equally between parties of the first and second part and party of the first part, both jointly and individually, agree to a prompt settlement with party of the second part for any amounts due hereunder."

7. Sets up procedure when one party desires to sell and the other dissents.

"8. In the event that party of the first part fails to make the payments as called for in this agreement, party of the second part may make such payments in which event party of the second part shall be the sole owner of said property and all right, title and interest of party of the first part shall end and party of the second part shall only be obligated to pay to party of the first part their proportionate share of any profit realized based on their cash contributions to the deal."

Pursuant to the contract, respondents paid the $26,000 as the down payment and took title to the property. Appellants at no subsequent time paid taxes, assessments or installments of principal as required by the agreement, and respondents did not make any additional payments as they were permitted to do by clause 8 of the contract. In December, 1948, Parcel No. 1 was conveyed by quitclaim, with the loss of the $12,000 down payment plus an operating loss of $11,532.75, making a total net loss on Parcel No. 1 of $23,532.75. A net profit was realized on Parcel No. 2 in the sum of $1,990.72. This made the resulting net loss to the venture the sum of $21,-542.03. No question is raised as to the fairness of the transfers. On October 30, 1951, respondents delivered a statement of the accounting to appellants and demanded payment of one half of the loss. Following appellants' refusal to pay, on January 29, 1952, the present action was commenced by respondents for breach of contract to share losses in the joint venture.

In support of the thesis that their liability was not established, appellants inveigh mightily against the court's interpretation of the joint adventure contract. They now

contend that since they failed to make the payments as required by the contract and respondents elected to pay them, then by virtue of paragraph 8 respondents became owners of the entire interest and appellants have no right in or to the acreage. As there was no profit in the sale, appellants contend that they have no interest in the land and that respondents were its exclusive owners prior to the sale at great loss. But before appellants may invoke support from paragraph 8, respondents must actually have made "the payments as called for in this agreement." Inasmuch as appellants admit that respondents did not exercise their right to exclude appellants from the venture, and to deal with the acreage to the exclusion of appellants, the latter have no protection in paragraph 8. Despite their arguments that respondents elected to avail themselves of the privileges of paragraph 8, no evidence is cited in support of such contention. It follows that under the circumstances, paragraph 8 does not govern the construction of the contract so as to require a holding that appellants are not bound by the instrument to pay their share of the losses of the joint adventure.

There is more to the contract than clause 8. Even if respondents had made the payments and acquired the total interest in the acreage as appellants vainly contend, the latter still could not prevail. While respondents' payment of the balance of the purchase price might have vested them with total ownership of the land, their interest in the contract for the joint venture and the obligations and benefits thereby imposed, still subsisted. Appellants would have shared in any profits realized from a sale by respondents whensoever it might have been consummated. Also, clause 8 contains no covenant that clause 6 shall not be operative. The latter clause requires appellants to pay their share of any loss sustained by the venture and no other passage in the instrument contradicts its provisions. Clause 5 requires "any profits arising from the sale" of the acreage must be divided equally between the parties. We are not without precedent. In an adjudicated case with a similar contract, paragraph 6 required the parties to share in the profits as their only compensation and that they bear equally the losses. It was the equivalent of clauses 5 and 6 of the contract here involved. But paragraph 8 in the similar contract prescribed the manner in which the proceeds of the sale of the property was to be used and divided. The court held that paragraph 8 pertained to,

and provided only for a distribution of, profits and that there was no inconsistency between paragraphs 6 and 8. In the event of loss, paragraph 8 was not controlling while 6 applied precisely. (*Kirkpatrick* v. *Smith,* 113 Cal.App.2d 409, 412 [248 P.2d 534].)

Appellants contend that clause 8 provides respondents' exclusive remedy. They say that it is self-executing upon respondents' election to make the payments provided for in clause 2, in which event respondents alone become owners of the acreage. This is belied by the last words of clause 8, to wit: "and party of the second part shall only be obligated to pay to party of the first part [appellants] their proportionate share of any profit realized based on their cash contribution to the deal." Since clause 6 requires equal division of losses and makes no distinction between the situation where appellants have paid their share of the cash contributions to the enterprise and where they have not paid such share, it cannot be said that clause 8 provides respondents' exclusive remedy. By reason of the presence of clause 6, there could be no justification for the contention that respondents must rely upon clause 8 in case of appellants' default. Effect must be given to every part of a contract if reasonably practicable, "each clause helping to interpret the other." (Civ. Code, § 1641.) *Martin* v. *Burris,* 57 Cal.App. 739 [208 P. 174], is no precedent for appellants' contention. While it affirmed the decision that the interest of the defendant in the property involved was forfeited, it did not hold that the forfeiture was plaintiffs' exclusive remedy. It reversed the case "to try the other issues," one of which was the claim for damages. (P. 748.) Because clause 6 is the only one that relates to losses, it must govern the rights of the parties with respect thereto.

### Admitting Evidence Subject to Motion to Strike, Not Prejudicial

Many words are spent in an effort to demonstrate the error of admitting testimony apparently offered to give the setting of the contract at the time of its execution. The objection made to the testimony was on the ground that William J. McLoney was deceased and that it was an effort to vary the terms of the contract. (Code Civ. Proc., § 1880.) Because the parties agreed that the contract was unambiguous and certain in its meaning, the objection was as useless as the testimony and neither could have caused prejudice. While the testimony complained of might have been used as a basis for arguing that the parties entered into a joint venture

contract and that the gist of it, as declared by appellants, is that ''as originally outlined to them was that of a joint adventure or partnership; they were to make the down payment of $26,000 and the McLoneys were to make subsequent payments until their outlay matched that of the Danelians,'' there was nothing in their testimony, say appellants, ''which varies or tends to vary the terms of the written contract.'' A scrutiny of the testimony of respondents, in the main, discloses an apparent effort to prove fraud as an inducement to make the contract. But nothing was proved. The writing was neither impeached nor impaired nor was it varied by all that was said. Hence, no prejudice was suffered and the testimony does not warrant a reversal. (*Nulty* v. *Price,* 202 Cal. 279, 284 [260 P. 291] ; *Black* v. *Black,* 91 Cal.App.2d 328, 335 [204 P.2d 950].)

### THE ACTION NOT BARRED BY THE STATUTE OF LIMITATIONS

██ Basing their logic upon the facts that they have paid nothing pursuant to the contract since it was executed in October, 1946, and the complaint was filed on January 29, 1952, appellants contend that it is barred by the statute of limitations. (Code Civ. Proc., § 337, four years.) But they misconceive the nature of the lawsuit. It is predicated on appellants' breach of their agreement promptly to pay respondents for losses incurred on account of the sale of the property, not for failure to make payments on the purchase price. As parties to the contract, appellants might forego participation in the enterprise and permit respondents to pay the total purchase price. They did that very thing. And had the property sold for exactly the amount of its cost, no demand could have been made upon appellants. But because it sold for less than its cost plus expenses of sale, respondents demanded payment by appellants of one half the loss as clause 6 had provided. ██ A joint adventurer has no cause of action for a breach of duty owed to the venture until the firm has been dissolved and an accounting has been had. (*Stowe* v. *Matson,* 94 Cal.App.2d 678, 683 [211 P.2d 591] ; *Cunningham* v. *deMordaigle,* 82 Cal.App.2d 620, 621 [186 P.2d 423].) ██ The period of limitation does not begin to run against a claim arising out of the operation of the joint venture until the accounts are settled and the balance is ascertained. (*Hendy* v. *March,* 75 Cal. 566, 570 [17 P. 702] ; *Freeman* v. *Donohoe,* 65 Cal.App. 65, 85 [223 P. 431].)

In the instant action, the complaint was filed within four months after respondents had ascertained the loss resulting from the sale of the acreage and the expenses suffered therefrom and had presented their statement of the account to appellants.

While no definite date was prescribed for a termination of the contract, an implication arises from a reading of the document that the venture will have terminated when the acreage has been sold and an account rendered. (*Air Purification, Inc.* v. *Carle*, 99 Cal.App.2d 258, 265 [221 P.2d 700]; *San Francisco Iron & Metal Co.* v. *American Milling & Ind. Co.*, 115 Cal.App. 238, 248 [1 P.2d 1008].)

### AMOUNT OF JUDGMENT IS CORRECT

Appellants assigned as error the inclusion in the losses sustained of one half of the following items:

1. Office and supervisory expense paid to B. Ganon, 80 hours at $2.50 per hour ...... $200.
2. Car expense, to B. Ganon ............... 30.
3. Erecting for sale sign .................. 60.

$290.

one half thereof .............$145.

Appellants contend that it is the practice and custom of real estate brokers to provide their own signs on property offered for sale and therefore the $60 expenditure was not chargeable to the joint venture. Appellants offered no evidence to establish, and they do not now contend, that the erection of an 8 by 15 foot billboard by the vendor of property being sold through a broker is unreasonable, an abuse of discretion or a breach of the joint venture agreement. A party hoping to dispose of property is not restricted to the performance of acts customarily done to effect a sale or to the practice of real estate brokers and their clients. The act of the trial court in including the $60 item in the account was not error.

Appellants also argue that the payments to Mr. Ganon were improperly included in the account by reason of the fact that he was a regular employee of respondents in a business separate and apart from the joint venture. They do not contend that the services were not rendered nor that they were not necessary to the furtherance of the joint venture. There is no reason why respondents should bear all the office expenses of the joint venture merely because the

person assigned to do the work is a regular employee of respondents in a separate capacity. A denial of judgment for one half of such expenditures in making a sale of the joint venture property would have been unjust. The services were actually performed.

### THE FINDING OF APPELLANTS' DEBT OF $10,771 WITH INTEREST FROM OCTOBER 31, 1951, IS SUPPORTED BY EVIDENCE

It is contended that respondents failed to use due diligence to minimize the damages and are therefore liable for the loss. (30 Am.Jur. 702.) On this subject conflicting evidence was admitted; hence the finding on that score cannot be disturbed. (*Boa* v. *San Francisco-Oakland Terminal Rys.*, 182 Cal. 93, 102 [187 P. 2]; *Dodds* v. *Stellar*, 77 Cal.App. 2d 411, 421 [175 P.2d 607].) They complain of respondents' not having consulted them with reference to the sale of the acreage. In the first place, appellants by their own voluntary acts escaped from their duties to the joint venture by their refusal to pay their portion of the purchase price; in the second place, neither of the McLoneys contacted respondents after the latter had made their demands in December, 1946, on appellants for payment of the latter's share. Moreover, inasmuch as appellants pleaded no facts in mitigation of damages, they are in no position to rely upon this affirmative defense. (*Vitagraph, Inc.* v. *Liberty Theatres Co.*, 197 Cal. 694, 699 [242 P. 709]; *Ramsay* v. *Rodgers*, 60 Cal.App. 771, 785 [214 P. 261].)

Judgment affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied April 28, 1954, and appellants' petition for a hearing by the Supreme Court was denied June 3, 1954.