[Civ. Nos. 113, 156.   First Appellate District.—January 16, 1906.]

THOMAS FLYNN, Respondent, v. THOMAS SEALE, Appellant.

Accounting Between Tenants in Common—Counterclaim—Indebtedness to Defendant's Devisor—Proof of Partnership.—In an action for an accounting between tenants in common of the rents and profits of a quarry in which defendant held title as devisee, and counterclaimed payments made and obligations incurred by his devisor, which obligation he claimed to have paid to protect his title, it was competent for plaintiff to prove a partnership between himself and the deceased devisor, under an agreement that the deceased would make all advances for the quarry, and that the plaintiff would render his services, and that the partnership was conducted at a loss, and that plaintiff had received no compensation for his services, and that the payments by the defendant were of the obligations incurred by the deceased partner only under the partnership agreement.

Id.—Payments Barred by Statute.—Payments made by the defendant more than two years before the commencement of the action are barred by the statute of limitations, and cannot be made the basis of. a counterclaim or cross-complaint against the plaintiff.

Id.—Mutual, Open and Current Account.—A mutual, open and current account implies a reciprocity of dealing made up of matters of setoff, wherein such party has a right of action against the other and can only exist when the right of action is in the same capacity. An individual obligation cannot be set off against a partnership claim, or to a claim by plaintiff in a representative capacity, nor can a partnership debt be set off to an individual claim by one of the members of the partnership.

Id.—Application of Payment—Account not Made Mutual by Payment.—A payment applied specifically by defendant to pay a claim against the estate of his testator, cannot be afterward otherwise applied; nor can a payment made generally on an open account render the account mutual, but can only reduce it *pro tanto.*

Id.—Account for Labor—Bill of Particulars—Objection at Trial—Immaterial Ruling.—Where plaintiff several months before the trial rendered a bill of particulars of an account for labor, the defendant, if dissatisfied therewith, should have objected thereto before the trial. The overruling of an objection to evidence of the account at the trial for insufficiency of the bill became immaterial, where no judgment was rendered on the account, but only on the accounting between the cotenants, as to which the plaintiff could not be precluded from testifying.

ID.—ACCOUNTING FOR RENTS COLLECTED BY EXECUTOR.—An accounting was properly rendered against the defendant for rents collected by him during the time that he was executor of the will of his devisor, as well as those received after distribution under the will. He held one-half of the rents as bailiff of the plaintiff, while he was executor, and his liability to account therefor is the same as if he himself had been the cotenant during that period.

APPEAL from a judgment by the Superior Court of Santa Clara County, and from an order refusing a new trial. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

Nicholas Bowden, and William A. Bowden, for Appellant.

Roger Johnson, H. E. Wilcox, and D. M. Burnett, for Respondent.

HARRISON, P. J.—The plaintiff and Henry W. Seale were for many years tenants in common of a tract of land in the county of Santa Clara, each owning an undivided half thereof, upon which there was a valuable quarry of building stone, and on September 6, 1888, said Henry W. Seale died, leaving a last will and testament, by which he devised the said land to the defendant herein, and since said date the plaintiff and the defendant have been cotenants thereof. The interest of said Henry W. Seale in said land was distributed to the defendant by an order of the superior court May 23, 1890, and on March 25, 1892, a final distribution of the estate was made to the defendant as the residuary legatee of said decedent. In his complaint herein filed September 10, 1895, the plaintiff alleges that since October 1, 1888, the said tract of land has yielded certain rents and profits, the greater portion whereof has been collected and received by the defendant; and that he (the plaintiff) has during said time made certain expenditures in the care and preservation of the property, and he asks that an account be taken and stated between them, and that he have judgment for the amount ascertained thereby to be due to him from the defendant. The cause came on for trial in 1900, and upon the trial the court found that between October 1, 1888, and January 17, 1900, the land had yielded

rents amounting to the sum of $5,905.40, of which $5,705.40 had been received by the defendant, and $200 by the plaintiff; that the defendant had paid to the plaintiff $175; that the defendant had paid for state and county taxes thereon the sum of $2,587.45; that during said time the plaintiff had paid out and expended for improvements upon said property $96.60, and the defendant the sum of $88.30. The court thereupon held that the plaintiff was entitled to recover from the defendant the sum of $1,288.12½, and rendered judgment accordingly.

In his answer to the complaint the defendant, in addition to traversing its allegations, pleaded as counterclaims against the plaintiff that Henry W. Seale, shortly prior to his death, paid for and on account of the plaintiff various sums of money, amounting in the aggregate to $8,000, which had not been repaid, and that at the request of the plaintiff he had become responsible and guaranteed to pay other moneys amounting to $2,523 for and on account of the plaintiff, and that since his death the defendant had been compelled to pay this latter sum in order to protect his title to the aforesaid land; that subsequent to October 1, 1888, the plaintiff, under a contract made by him prior to the death of Henry W. Seale, furnished to one McClerie building stone 'from the quarry on the land, of the value of $10,500, and sold from said quarry other quantities of stone, for which he received in the aggregate the sum of $21,000, which he had converted to his own use. The same matters were also pleaded by the defendant by way of cross-complaint against the plaintiff.

Upon the issues joined on these allegations, the court found that prior to 1887 the plaintiff quarried from the premises certain building stone, under an agreement between him and Henry W. Seale, at his own cost and expense, and that said Seale gave to him all his right, title and interest in the stone so quarried; that in July, 1887, they agreed to develop the quarry and enter into contracts for the construction of buildings from stone quarried therefrom, and to share equally in the losses and profits resulting therefrom, and entered into and formed a partnership for such purposes, by the terms of which it was agreed that the plaintiff should give his personal time and attention to the service of said partnership and should receive a reasonable sum in payment therefor, and that said

Henry W. Seale should advance or procure to be advanced moneys sufficient to develop the quarry and to carry out the contracts that might be entered into; that thereupon they opened an account with the bank of Wells, Fargo & Co. in San Francisco in the name of Seale & Flynn, under an agreement between them and the bank that the moneys necessary to carry on said partnership business should be drawn by the plaintiff against said account; and that the profits of the business, if any, should be deposited by him to the credit of the account. That thereupon, about the first day of August, 1887, the plaintiff commenced the development of said quarry under said agreement, and, for the payment of the costs and expenses thereof, obtained money from said bank on said account by checks signed by him with the name of Seale & Flynn. In July, 1888, he entered into a contract on behalf of the partnership with one McClerie to furnish stone from the quarry for the erection of a building in San Francisco, and to dress and place the same therein, for the sum of $10,500. Before its completion Seale died, and after his death the plaintiff, as the surviving partner and with the consent of the defendant, carried on the contract and completed the same March 13, 1889. While said contract was being executed, the plaintiff drew from the bank on said account $3,669.30 in the lifetime of Henry W. Seale, and after his death, with the consent of the defendant, the sum of $1,475, all of which was used in completing the McClerie contract. On December 3, 1888, the balance due the bank on said account amounted to $1,644.33, which the defendant paid to it February 21, 1891. There was at that time a charge against the account upon the books of the bank of $292.15 for interest, but the bank remitted the same, and the defendant did not pay any part of it. September 24, 1888, after the death of Henry W. Seale. plaintiff drew from the bank the sum of $587, not included in the above account, which he expended in completing the McClerie contract, but by a mistake of the bank this amount was charged to the account of the estate of Henry W. Seale, and on March 25, 1892, when the mistake was discovered, the defendant paid that amount to the bank. While the plaintiff was carrying out the McClerie contract, and prior to its completion, he sold to divers individuals some of the stone quarried by him under the agreement made by him prior to 1887

with Henry W. Seale, and also some that was quarried after the partnership agreement was entered into. For that which was quarried during the partnership, the court finds that the plaintiff received about $50 more than the expense of quarrying it. It finds, however, that the plaintiff expended all that he thus received in the completion of the McClerie contract, and that the sale of said stone was a part of the operation of the quarry for the purpose of carrying out this contract. The court, moreover, found that there was no profit in the McClerie contract, that the partnership resulted in a loss, and that the plaintiff never received any compensation for the time and services devoted by him to its business.

The above findings are amply sustained by the evidence. The plaintiff was a competent witness to establish the fact of the partnership between him and Henry W. Seale, as well as the terms of such partnership, and his testimony thereon was direct and positive, and the finding of the court must be accepted as conclusive. There is no evidence in the record, or any finding by the court, that Henry W. Seale paid out in his lifetime any money for the plaintiff, or that the defendant after his death advanced to or paid out for the plaintiff any money on account of said lands or for their improvement or preservation. The $2,523 alleged by him to have been paid out includes, with the two items of $1,644.33 and $587 paid to the bank, the sum of $292 charged by the bank for interest, but which the court finds the defendant did not pay. The moneys which were thus paid by him were not an advancement to the plaintiff, but were paid to the bank for the purpose of liquidating and discharging an obligation of Henry W. Seale in favor of the bank, which had been incurred in the execution of the McClerie contract, and which, as between the plaintiff and Henry W. Seale, was the obligation of the latter under the terms of their partnership agreement, wherein he agreed to advance or procure to be advanced the moneys necessary to develop the quarry and carry out its contracts. As these payments were made more than two years prior to the commencement of the action, the court found that the defendant's right of action therefor was barred by the statute of limitations, and consequently could not be the basis of a counterclaim or of a cross-complaint.

It is urged by the appellant that these transactions between the 6th of September, 1888, and the commencement of the action, constituted a mutual, open and current account between him and plaintiff, and by reason thereof, under section 344 of the Code of Civil Procedure, the statute of limitations is not a defense. A mutual account implies a reciprocity of dealing between the parties to the account, and is made up of matters of setoff wherein each party has a right of action against the other; and a setoff can be pleaded only when the right of action is against the plaintiff in the same capacity as that in which he is prosecuting his claim. An individual obligation is not a matter of setoff to a partnership claim or to a claim by the plaintiff in a representative capacity; nor can a partnership debt be a setoff to a claim by one of the members of the partnership.

After the death of Henry W. Seale, the only transactions with which the plaintiff and the defendant were connected, or in which each of them had an interest or relation, aside from the receipt and expenditure by them respectively of money in connection with the land of which they were tenants in common, were the completion by the plaintiff of the McClerie contract and the payment by the defendant to the bank of Wells, Fargo & Co. of its claim against the firm of Seale & Flynn. The defendant had no claim against the plaintiff for the proceeds of the sale of the stone which he had quarried under the agreement with Henry W. Seale prior to 1887, and the proceeds from the sale of stone subsequently quarried were shown to have been applied to the completion of the McClerie contract. As already shown, the payment to the bank was not upon any account or transaction between the defendant and the plaintiff, or for any matter for which the defendant could have maintained an action against the plaintiff. The payment was made for the specific purpose of discharging the claim of the bank against the estate of Henry W. Seale; and the defendant, when he made the payment, directed that it be applied for that purpose. The payment having then been applied in accordance with his directions, it was not competent for him thereafter to direct a different application. Even if it had been a general payment on an open account between them, the account would not for that reason have been rendered mutual, since the mere payment of money

upon an account does not have that effect, but operates simply as a reduction *pro tanto* of the claim.

After the trial of the cause had commenced, the plaintiff was called as a witness in his own behalf, whereupon the defendant objected to his being permitted to testify, and asked for an order excluding all evidence on his behalf upon the ground that, after a demand had been made upon him by the defendant for a bill of items of the account sued upon, he had failed to deliver the same, and, in support of this motion and objection, read the demand, together with a bill of items which had been delivered in response thereto, but which he claimed to be insufficient  The court overruled the objection and denied the motion, and this ruling is assigned as error. The action by the plaintiff is not only upon an account for labor performed by him, but also for an accounting by the defendant for moneys received by him to the use of the plaintiff, and his failure to deliver the bill of items would not preclude him from giving testimony upon this portion of his complaint.  It was shown that he did deliver a bill of items to the defendant several months before the trial began, and if the defendant was not satisfied therewith, he should have made his objection sooner and given to the plaintiff an opportunity to obviate it.  (*McCarthy* v. *Mt. Tecarte L. & W. Co.*, 110 Cal. 687, [43 Pac. 391].)  As, however, the court in its judgment did not include any allowance to the plaintiff for his claim upon the account for labor, its ruling upon the motion became inconsequent.

The court properly sustained the objection to the question asked of the plaintiff in reference to the $250 check, upon the ground that it was not proper cross-examination.  The defendant could have shown that the plaintiff had received the money represented thereby as a part of his defense, if he had so desired, but it does not appear that such offer was made.

The claim of the appellant that he cannot be required to account for the rents collected by him during the period that he was executor of the will of Henry W. Seale, and prior to the distribution of the land to him, cannot be sustained.  During this time the estate of Henry W. Seale was entitled to only one-half of the rents, and the defendant was required to account to it for only that half; the other half belonged to the plaintiff, and was received by the defendant, not for

the estate of which he was executor, but as bailiff in possession for the plaintiff and the estate. His liability to account to the plaintiff is the same as if he had himself been the co-tenant during that period.

The judgment and order are affirmed.

Cooper, J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 16, 1906.