[Civ. No. 4527. First Appellate District, Division One.—July 26, 1923.]

SHIRLEY HOUGHTON et al., Respondents, v. OSWALD G. LAWTON et al., Appellants.

[1] CONTRACTS — MODIFICATION — EXECUTED ORAL AGREEMENTS—EVIDENCE.—Before courts will set aside solemn binding written contracts and substitute therefor oral agreements, proof of the latter as to every element thereof, as well as execution, must be clear and convincing; and in this action on a written contract, the evidence did not sustain the contention of defendants that there was a subsequent executed oral agreement.

[2] ID.—DAMAGES—SPECULATIVE EVIDENCE.—In this action to recover certain moneys claimed to be due under the terms of a written contract, the trial court properly ruled that offered testimony as to damages, conjectural and speculative in character, was inadmissible in support of defendants' counterclaim.

[3] TRIALS—ADDITIONAL EVIDENCE—REOPENING OF CASE—DISCRETION. The action of the trial court in refusing to reopen an action after

---

1. Parol evidence to add to or vary a writing, notes, 56 **Am. St. Rep.** 659; 17 **L. R. A.** 270.

the close of the trial, for the purpose of allowing the introduction of additional evidence, is not an abuse of discretion where there is no showing of any excuse for not having produced the evidence at the trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haven, Athearn, Chandler & Farmer for Appellants.

Aitken, Glensor, Clewe & Van Dine and Courtney L. Moore for Respondents.

ST. SURE, J.—Defendants appeal from a judgment in favor of plaintiffs in the sum of $2,805.16. The controversy arises out of a claim of the plaintiffs that there are certain moneys due them under the terms of an agreement dated January 1, 1915. The complaint consists of three causes of action, viz.: (1) Upon an account; (2) upon an open book account; and (3) upon an account stated.

The answer admits the making of the contract, but denies the indebtedness, and sets up a counterclaim.

The counterclaim alleges that on or about December 1, 1915, the parties modified that portion of the written contract providing for a fifty per cent participation in profits and losses by allowing the plaintiffs to contract independently thereof for the construction and repair of the Reliance Building, and that in consideration of the waiver by the plaintiffs of their rights to participate equally in the profits and losses thereof, the plaintiffs agreed that they would pay defendants three and one-half per cent of the costs of the reconstruction and repair of said building and that the actual cost of the same was $70,000, and that three and one-half per cent of $70,000 is $2,450, which defendants are entitled to receive, and that because of this modification of the contract they are not in any manner liable for the losses on this job.

It is further alleged in the counterclaim that prior to August 1, 1916, the parties, acting under the contract of January 1, 1915, undertook the construction of a church

building; that prior to August 1, 1916, defendants had superintended the work of constructing the church building in accordance with the terms of the original agreement, and had in all respects complied with the contract and were ready and willing to carry out the   contract and superintend and complete the construction of the church building, but were prevented from so doing by the plaintiffs, and were ousted from said work and prevented from carrying on same to completion; that thereupon plaintiffs assumed the responsibility for the further conduct of the work and carried on the same in a careless and negligent manner, whereas if the defendants had been allowed to continue the work they would have made a profit of $3,500 under said contract; that there was a profit of only $1,450 on said work, and that thereby the defendants lost the sum of $1,025.

The counterclaim further alleges that in accordance with the provisions of the agreement of January 1, 1915, and between the first day of January, 1915, and the thirtieth day of December, 1916, the plaintiffs advanced to the defendants the costs and expenses of maintaining an office, to wit, the sum of $5,369.81; that by reason of the services performed by these defendants in the supervising and management and construction of divers buildings, the plaintiffs received for the benefit of the defendants the sum of $8,188.98, and that there is now due and owing to these defendants, on account of the services rendered under said contract and the modification thereof, as hereinbefore set forth, and by reason of the plaintiffs having ousted the defendants from the supervision of said church as hereinabove set forth, the sum of $2,819.17.

After issue joined, and trial, the court found that the parties entered into the agreement, referred to herein as the agreement of January 1, 1915, or the original agreement; that during the time that said agreement was in force defendants did not pay all the costs and expenses in maintaining an office, nor all costs and expenses incurred or arising in estimating and bidding on all work undertaken under the agreement, nor did defendants bear fifty per cent of the losses suffered on all work undertaken under the agreement; that, on the contrary, plaintiffs paid out certain sums for costs and expenses of maintaining an office and of bidding and estimating on work; that plaintiffs have also borne cer-

tain losses in full on work undertaken under said agreement, and that the sum so paid out and fifty per cent of the losses so borne by plaintiffs is the sum of $7,519.14; that defendants are entitled to various credits against plaintiffs amounting to the sum of $4,713.98.

The court further found that it is untrue that between January 1, 1915, and December 30, 1916, the plaintiffs, in accordance with the terms of the agreement, advanced to the defendants the sum of $5,369.81 and no more; but in this connection the court found that the plaintiffs advanced to the defendants the sum of $7,519.14 in accordance with the terms of said agreement; that the defendants did not repay to the plaintiffs the sum of $7,519.14 or any other sum whatsoever in excess of $4,713.98; that plaintiffs are not indebted to the defendants in the sum of $2,819.17 or any other sum whatsoever, but in this connection the court finds that the defendants are indebted to plaintiffs in the sum of $2,805.16.

The court further found in favor of plaintiffs upon the first and second causes of action stated in their complaint, and against them on the third; it further found against defendants upon their claim that the original agreement had been modified, and also against them upon their claim of the losses due to them of $1,025 on the construction of the church building.

Defendants' first contention is that there was a special agreement made by the parties with regard to the Reliance Building repairs which reduced plaintiffs' claim by the sum of $2,698.64. This so-called "special agreement" is mentioned in defendants' counterclaim as an *amendment, change,* and *modification* of the agreement between the parties, dated January 1, 1915. The record shows that the following occurred during the course of the trial:

"The Court: You had better proceed with the defense then. If you claim a modification of the agreement, it is up to you to prove it, I presume. Have you pleaded a modification?

"Mr. Athearn: Yes.

"The Court: . . . Will you stipulate that we may take under advisement the broader question whether or not there was a special contract touching the Heeseman (Reliance) job, and second, whether there was an account stated between

Mr. Lawton and Mr. Raymond, and when the court has come to some conclusion on those matters, I will send for you and Mr. Athearn and we will arrange what, if anything, further should be done.

"Mr. Moore: That is very satisfactory.

"Mr. Athearn: We so stipulate.

"The defendants then proceeded to introduce evidence to sustain their affirmative defense of a modification of the written agreement. . . .

"Thereupon pursuant to the prior stipulation the following two issues were submitted to the court for decision:

"(1) Was there a modification of the agreement of January 1, 1915, as to the Heeseman (Reliance) job?

"(2) Had an account been stated between the parties?

"On February 23, 1921, the following order appears in the minutes of the court: 'It is ordered and adjudged that there was no modification of the contract herein and that there was no account stated.'

"On March 31, 1921, the following proceedings were had:

"Mr. Haven: I understand your Honor did not file an opinion on the preliminary ruling that you made.

"The Court: No, sir.

"Mr. Haven: I would like to know for my own information the basis for the decision with regard to the Reliance Building.

"The Court: Simply a question of the preponderance of the evidence, it is purely a question of fact. I thought that your defense here in regard to a change or modification of the contract was not supported by a preponderance of evidence, and I thought their contention concerning the account stated was not supported by a preponderance of evidence. There was not sufficient convincing force to the testimony which was adduced in support of either one of the propositions which would justify me in giving a judgment. That is the whole thing in a nutshell, it is purely a question of fact, a question of the weight of evidence. I don't know that I can say any more about it to you.

"Mr. Haven: That is sufficient.

"The Court: I have intimated I do not really feel that this defense that Mr. Lawton made here in regard to the modification of the contract was supported by a preponderance of the evidence. The burden was upon you to do that."

It is thus plainly seen that the case was tried in the lower court upon the theory that there was a modification of the original agreement with reference to the repair of the Reliance Building. Section 1698 of the Civil Code provides that "a contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." Defendants make no claim that there was a subsequent written agreement, but predicate their case on the claim of an executed oral agreement. [1] Before courts will set aside solemn binding written contracts and substitute therefor oral agreements, proof of the latter as to every element thereof, as well as execution, must be clear and convincing. We have read and considered the entire record, and from such reading and consideration we are of the opinion that the evidence does not sustain the contention of defendants that there was an executed oral agreement. On the contrary, we believe that the evidence supports the finding of the trial court in the premises.

Disagreements between the parties occasioned defendants to notify the plaintiffs of the termination and cancellation of the agreement under which they were working. The dispute, evidenced by correspondence between the parties, had particular bearing upon the church job. Defendant Lawton testified as follows: "With regard to the Second Church of Christ job, which I will refer to as the church job, Lawton and Vezey carried on the construction of at least ninety per cent of this job under the terms of the agency agreement, and when the job was within ten per cent of being finished we were ousted from the job by the Van Sant-Houghton Company." The evidence shows that the profit on the church job was $1,450, for which defendants were given credit for one-half, or $725.

Defendants urge that they offered to prove that the profits on the church job were greatly reduced by reason of defendants' wrongful dismissal, by showing that plaintiffs and defendants had estimated the profits on the job just prior to the time when defendants were called off by plaintiffs, and that at that time the defendants had kept within the estimates on the building, which evidence the court refused to admit.

[2] The record shows that no competent evidence was offered of "estimated profits on the job"; that the trial

court did not refuse to admit evidence of damages occasioned by defendants' dismissal, but what the court did was to rule, and quite properly, that offered testimony as to damages, conjectural and speculative in character, was inadmissible.

With reference to errors in plaintiffs' account, complained of by defendants, the record shows that there was in evidence all of plaintiffs' books showing accounts of transactions had between the parties. Accountants testified explaining the accounts and the system of accounting. Witnesses testified concerning the transaction between the respective parties. Ample opportunity was had by the parties to examine the accounts. Upon these matters, involving questions of fact, there was a conflict of evidence, and under such circumstances we may not disturb the finding of the trial court.

[3] Defendants attack as error the refusal of the court to permit them to offer further evidence upon issues which had been theretofore determined by the trial court and hereinabove adverted to. The offer was to "prove by Mr. Lawton that subsequent to the matter being submitted to your Honor he first discovered his diary for the year 1916, that that diary contained," etc. The court, in sustaining an objection to the testimony offered, observed that it was self-serving and came at a belated hour.

The action of the trial court in refusing to reopen an action after the close of the trial, for the purpose of allowing the introduction of additional evidence, is not an abuse of discretion where there is no showing of any excuse for not having produced the evidence at the trial. (*Consolidated National Bank* v. *Pacific Coast S. S. Co.*, 95 Cal. 1 [29 Am. St. Rep. 85, 30 Pac. 96].)

The judgment is affirmed.

Richards, J., and Tyler, P. J., concurred.