[Civ. No. 12. Fourth Appellate District.—October 25, 1929.]

HARBOR CONSTRUCTION COMPANY (a Corporation), Appellant, v. MRS. A. G. WALTERS, Respondent.

John A. Jorgenson for Appellant.

Scarborough, Forgy & Reinhaus for Respondent.

SLOANE, P. J.—This appeal was taken by the plaintiff from a judgment of the Superior Court of Orange County denying plaintiff's demand for recovery of $625 with interest, the contract price for services rendered in preparing building plans and specifications.

The contract was in writing, dated June 18, 1924, and in words and figures as follows:

"Agreement.

"This Agreement, made and entered into this 18 day of June, 1924, by and between the Harbor Construction Company, hereinafter referred to as the Designers, and Mrs. A. G. Walters, hereinafter referred to as the owner

"Witnesseth:

"That the said Harbor Construction Company, for and in consideration of the payments to be made to them by the Owner, as hereinafter provided, do hereby covenant and agree to furnish preliminary sketches, working plans and specifications, details and any other drawings that may be necessary in connection with the building operations for the erection of the building referred to.

"The building herein referred to is to be erected upon property of the Owner, located on Dana Point Calif. and

is to consist of a 2 story Reinforced Concrete Hotel and store Bldg.

"The stipulated cost or estimate is to be about $25,000.00 due allowance being made for the difficulty of estimating cost before the completion of the plans and specifications, and for a greater or lower cost caused by the requirements, either as to size or number of rooms, materials used or other items of specifications or detail provided by the Designers, in their endeavor to meet the wishes or follow the instruction of the Owner.

"The Owner shall give the Designers a reasonable opportunity to redraw the sketches, plans or revise the specifications, at any or all times, and it shall not constitute a breach of this agreement if the building designed shall exceed the stipulated cost or estimate, unless the Architects unreasonably refuse to alter the plans and specifications for the purpose of reducing the cost.

"The Owner, for and in consideration of said Harbor Construction Company performing the said covenants and agreements above specified, hereby agrees to pay the said Harbor Construction Company, a total aggregating 2½% of the estimated cost of the building, 50% of said sum when preliminary sketches are approved and the balance upon the completion of the plans and specifications.

"Should the Harbor Construction Company be awarded the contract for the erection and completion of said building, it is understood that this payment of 2½%, covering cost of plans and specifications, is to be deducted from the first payment of the total contract price.

"Signed:
"MRS. A. G. WALTERS
"Owner.
"HARBOR CONSTRUCTION COMPANY
"By WM. J. McCORMACK.
"Architecture-Engineering.

"Witness:
"_____."

It is not disputed that the plaintiff prepared and submitted to defendant in due time preliminary plans and specifications, in full compliance with the written contract, or that these were afterward completed in all details.

Defendant, however, pleaded as a defense to plaintiff's recovery, a subsequent oral agreement, entered into between herself and one William J. McCormack, acting for and in the name of the plaintiff company, in which it was agreed on account of defendant's inability to finance the proposed building, that the plaintiff company would undertake to procure for defendant the necessary funds for the enterprise, and that in the event of failure to procure the necessary amount, the defendant would owe the plaintiff nothing, unless she actually used said plans and specifications. It appears from the evidence that the money was not procured and the building not constructed or the plans used. No demand was made upon the defendant for payment therefor, until made by instituting this suit in December, 1926.

The trial court, over plaintiff's objections, admitted evidence of the oral agreement for modification of the written contract, after its execution, and found that it constituted a valid postponement of defendant's liability to pay for the plans, until such time as the building was financed, or until the defendant otherwise made use of the plans and specifications, neither of which events has ever happened.

Plaintiff's appeal rests on the contention that it was reversible error for the trial court to admit in evidence testimony of the subsequent oral agreement modifying and changing the terms of the written contract, or to hold such agreement binding on the plaintiff; and that the evidence of McCormack's relations to the plaintiff corporation was insufficient in any event, to support the finding that he was an authorized agent of the corporation to enter into such an agreement.

The only testimony shown by the record as to the agency of McCormack, is that of one Stephen Cope, who described himself as having been at the time of these transactions, manager of the Harbor Construction Company. He testified that McCormack was an employee and head draftsman of the plaintiff corporation, and that the written contract was signed for the company by McCormack because of this position, and because he had prepared the contract, and that McCormack had authority to sign on behalf of the company, and had authority to make contracts in its behalf.

Counsel contends that authority to enter into a contract binding on the corporation does not imply, nor carry with

it authority to modify a contract or abrogate it, when once duly executed.

This general proposition is sustained by the authorities cited.

In *Thomas* v. *Anthony,* 30 Cal. App. 217, 222 [157 Pac. 823, 824], it is said (quoting from 31 Cyc. 1387): ''Presumptively an agent is employed to make contracts, not to rescind or modify them; to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up rights or interests for his principal, . . . unless the principal knew or approved of such modifications by the agent.''

In *Jones* v. *Title Guaranty & Trust Co.,* 178 Cal. 376, 379 [173 Pac. 586, 588], where the agent who executed a contract in the name of his principal, undertook to change or modify it, the court quotes the rule as laid down in 31 Cyc., and adds: ''When Jones authorized Wood to make a certain contract for him and deposit his check and notes to be turned over in accordance with such contract, he did not thereby authorize Wood or the defendant to dispose of check and notes under a different and less favorable contract. Certainly it would not be contended that Wood had ostensible authority to so change the terms of the deposit as to substitute for the lease originally contemplated, a lease of other property, upon other terms. No more can it be said that Wood had ostensible authority to alter the material provision regarding the obtaining of sub-leases.''

In *Morton* v. *Albers Bros. Milling Co.,* 66 Cal. App. 391, 398 [226 Pac. 809, 812], where one Prenot, assistant manager of the corporation, one of the parties to the contract, undertook by oral agreement to modify the terms of a written contract, the court says: ''Prenot was not a general officer. He was only an assistant manager for appellant at one of its branch offices. It possibly may be inferred from the evidence that he was authorized to do certain things which were necessarily incident to the performance of the written contract, such, for example, as seeing to it that proper tests were made to determine whether the milo measured up to the requirements of the contract. But authority in an agent to carry out or to perform a contract already made by his principal does not include authority to change the contract,

or to waive any of its provisions, especially where, as here, the provision is one which was intended for the benefit of the principal. Presumptively an agent is employed to acquire interests, not to give them up.''

There is some contention on the part of respondent that the oral agreement in this case was called to the attention of Mr. Cope, the manager of plaintiff corporation, and that he subsequently had a conversation with the defendant with regard thereto, and it is contended that he did not repudiate McCormack's authority to enter into such modifying agreement. It is true that the defendant did testify to having talked over the agreement of McCormack with Mr. Cope, but respondent is mistaken in assuming that anything was said calculated to estop the corporation from disputing McCormack's authority. In fact it does not appear from the record what was said by Mr. Cope in response to Mrs. Walters' statement of the oral agreement.

Even if McCormack had authority to enter into a valid agreement modifying the written contract by creating new conditions under which defendant is liable to pay for the services rendered, we have then an attempt to vary the terms of a written contract by an unexecuted *oral* agreement, and in contravention of section 1698 of the Civil Code. That the agreement with McCormack was not in writing is not disputed. The testimony of Mrs. Walters, the defendant, and her niece, Margaret Walters, the only evidence given on this point, was to the effect that after the contract was signed, and at the time of the presentation of the preliminary drawings by Mr. McCormack, Mrs. Walters stated that she had seen her bankers ''and they absolutely refused to loan any money at Dana Point at that time, so that there was no use in going ahead with the plans and specifications, and that McCormack then said he was sure that he could secure such a loan, and that if he failed there was to be no charge to me until such time as I used his plans and specifications, and was able to get a loan to put up the building.''

And she further stated that there was no one present at the time of such conversation but McCormack, herself and her niece, Margaret.

This verbal agreement was not only unexecuted, so as to bind the corporation; it was not even made in the name of

the corporation, so far as the undertaking to negotiate a loan for Mrs. Walters was concerned, but was a personal undertaking on the part of McCormack. ■ Furthermore, the modification of the terms and time of payment was without consideration. Nothing of value was to pass to the plaintiff by undertaking to finance the deal, and waive right to payment for these plans and specifications, and Mrs. Walters on her part assumed no obligation, and relinquished no right or advantage to which she was entitled under the written contract.

Whether this alleged oral agreement is considered as a mere modification of the written contract, or is a novation, it lacks the requirements of the statute to make it enforceable.

Section 1531 of the Civil Code defines novation as follows: "Novation is made (1) By a substitution of a new obligation between the same parties, with intent to extinguish the old obligation."

Section 1532 of the Civil Code: "Novation is made by contract, and is subject to all rules concerning contracts in general."

Section 1541 of the Civil Code: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

■ The contention of respondent's counsel that the oral agreement here relied on had become an executed agreement, is not supported by their own authorities. They cite 6 California Jurisprudence, 376. The text of this citation recites: "Obviously the executed oral agreement which may be proved for the purpose of altering a previous written contract, must consist in the doing or suffering of something not required to be done by the terms of the writing."

This rule is quoted from *Mackenzie* v. *Hodgkin*, 126 Cal. 591 [77 Am. St. Rep. 209, 59 Pac. 36, 38], which is also cited by respondent. In that case the written contract involved the sale of an entire crop of raisins at a stipulated price. Evidence was offered to show a subsequent oral agreement to pay for a certain portion of the crop called Valencia raisins, at a different price. Defendant claimed that he had made and delivered the Valencia raisins on the oral promise to pay for them at three and one-half cents per pound. The court in the opinion says:

"His counsel argue that this is 'an executed parol agreement,' and therefore that evidence thereof is admissible to alter the previous writing. (Civ. Code 1698.) We do not think so. We find no evidence that William Brown and Company ever paid anything as on a purchase by them of the Valencias, and, as concerns Hodgkin, so far as appears he did nothing under the alleged oral agreement which he was not bound to do in the proper fulfillment of the written contract. . . . Obviously the executed oral agreement which may be proved for the purpose of altering the previous written contract, must consist in the doing or suffering of something not required to be done or suffered by the terms of the writing.

"True, the defendant here testified that he sold the Valencia Raisins, but the alleged sale rests on mere spoken words, which in themselves could not be allowed to alter the writing. His acts toward the execution of any contract were only such, so far as proved, as the original agreement require him to perform."

The facts accompanying respondent's further authorities cited on the question of executed oral contracts, are quite distinguishable from the circumstances of this case.

In the instant case the evidence shows a complete fulfillment of plaintiff's contract, to the point of entitling it to one-half of the stipulated price for its services, a representation by defendant to McCormack that she could not finance her building, and that further preparation of the plans might as well stop, a gratuitous offer by McCormack to procure her a loan, and to release her from obligation to pay for the plans unless he procure her the necessary financial aid, or she in some other way use the plans as prepared by plaintiff.

McCormack's offer to negotiate a loan and suspend defendant's liability to pay for the plans, even if within the scope of his agency, was entirely without consideration. Defendant on her part, neither undertook to do anything not within the terms of her written contract, nor subjected herself to any new burden or liability.

She was, it is true, only liable at that time, for fifty per cent of the commission called for by the writing, and if there was anything in the relations of the parties to entitle her to order a suspension of the completion of the plans

and specifications, she might by notice to that effect, have escaped liability for the uncompleted part of plaintiff's work, but there is nothing in the record to show the extent to which the plans had been completed or the value of the work still to be done in perfecting them. The plans were completed, and were, so far as appears, in strict compliance with the contract, and the only reason given why they were not accepted and used by the defendant was her inability to finance her building, a situation for which, under the terms of the written contract, the plaintiff was in nowise responsible.

 Respondents place some stress upon the fact that during the long period which elapsed from the date of the alleged oral agreement to the time of the commencement of this action, no demand was made upon defendant for payment of any amount claimed for services rendered in preparing the plans and specifications. While this was a circumstance that might properly have been considered by the court, it is in nowise conclusive of the legal rights of the parties. The witness Cope testified that the matter was allowed to rest during this period until it became apparent to plaintiff that there was no prospect of the building being constructed, and until after it was understood by plaintiff that the defendant had transferred her activities to another locality.

The judgment is reversed.

Marks, J., and Barnard, J., concurred.