[S. F. No. 16724. In Bank. Dec. 26, 1944.]

MAYNARD GARRISON, as Insurance Commissioner, etc., Appellant, v. EDWARD BROWN AND SONS (a Corporation), Respondent.

Robert W. Kenny, Attorney General, John L. Nourse, Deputy Attorney General, Hester Webb and U. S. Webb for Appellant.

Dunne & Dunne, Arthur B. Dunne and Elden C. Friel for Respondent.

TRAYNOR, J.—Union Indemnity Company, hereinafter called Union, a Louisiana corporation licensed to do insurance

business in this state, was declared insolvent by a Louisiana court on January 6, 1933, and was declared insolvent in California by decree of the Superior Court of the City and County of San Francisco on January 12, 1933. The Insurance Commissioner was appointed liquidator in California and vested with all property rights of the company in California. It does not appear that Union was unable to meet its liabilities as they became due or that it ceased operations before it was declared insolvent, although for some time before that date, at least since October 1, 1932, the liabilities of the company exceeded its assets. Union's liquidation in Louisiana resulted in a dividend of less than 4 per cent. In California no dividend has yet been paid. This case arises out of Union's relation to its general agent for California, Edward Brown & Sons, hereinafter called Brown. On October 1, 1931, Brown entered into a written agreement, guaranteed by the two other defendants, to act as general agent for Union. This agreement was modified and supplemented by another written agreement, also effective since October 1, 1931. There was also a profit-sharing agreement. Following the appointment of the liquidator in this state, defendants filed with him a claim for $91,743.52, of which he allowed $25,897.97, rejecting the balance. In January, 1936, defendants filed a petition for an order to show cause why their claim should not be allowed for the full amount. In the same month the plaintiff liquidator filed this action against the defendants to recover $11,702.29, later modified to $9,757.39, allegedly representing insurance premiums collected by Brown before and after the declaration of insolvency and not turned over to Union or the liquidator. Under the agreements of October 1, 1931, Brown was appointed Union's agent for the purpose of "procuring acceptable applications for, and collecting premiums" on the classes of insurance and bonds named in the agreements. Brown was required to adhere to the rates prescribed by Union and to comply with the rules and regulations of the company with respect to the issuance of policies and bonds and "to conduct the business . . . strictly upon such terms, conditions and instructions as the Company may prescribe in its letters of instruction, or by letter, telegram, or telephone." Brown was to report to Union daily, or as soon as practicable, each policy or other writing issued and each change in the character or amount of

Union's liability. Brown had also to render to Union monthly accounts covering all policies written, renewed or cancelled during the preceding month and to remit the amount thereof by deposit in a certain San Francisco bank on the fourth day of the fourth month following that in which the business was written. The agent was responsible under the agreement for the payment of all original and advance premiums on bonds and policies written by it. In the case of cancellations it was allowed return premiums if no premiums had been collected. The agency agreement further provided: ''All premiums collected by the agent for the company are the property of the company and shall be held by the agent as a fiduciary trust until delivered to the company. The privilege of deducting commissions which are debts due the agent, if granted, shall not be taken as a waiver by the company of its exclusive ownership of all premiums.'' As to termination of the agency, the agreement called for a sixty-day written notice by either party and empowered Union to terminate the relation instantly for cause. Brown's last remittance to Union covered business written until the end of September, 1932. Plaintiff's action relates to premiums on business written after that date and, to a small extent, to premiums on previous business collected upon an audit. Defendants filed an answer denying any liability and setting up their claims against Union as an off-set and counterclaim. The trial court entered judgment against plaintiff and in favor of defendants on their cross-complaint for $39,267.31, which was reduced to $24,267.31 when a motion for a new trial was argued. Plaintiff appealed, and defendant filed a cross-appeal, which was not perfected. The matter is here on the clerk's transcript, the reporter having died while proceedings to secure a reporter's transcript were pending. (*Caminetti* v. *Edward Brown & Sons,* 23 Cal. 2d 511 [144 P.2d 570].) The sole question to be determined is whether the findings of the trial court support the judgment.

Defendants contend that the agency agreement under which Brown was a trustee of the premiums collected was so modified as to make the relation of Union and Brown one of creditor and debtor rather than of beneficiary and trustee, and that this modification has been conclusively determined by the trial court in its findings. ■ If defendants undertook

their obligations as to the remittance of premiums in a fiduciary capacity, they would not be permitted to set off personal claims, for a fiduciary cannot set off claims owed to him in his personal capacity against obligations that he assumes as a trustee. (*Bond* v. *City of Pasadena,* 6 Cal.2d 139, 141 [56 P.2d 946]; *Kaye* v. *Metz,* 186 Cal. 42, 49 [198 P. 1047]; *In re Hildebrandt,* 92 Cal. 433, 436 [28 P. 486]; *Flynn* v. *Seale,* 2 Cal.App. 665, 670 [84 P. 263]; *Libby* v. *Hopkins,* 104 U.S. 303 [26 L.Ed. 769]; *Cook County Nat. Bank* v. *United States,* 107 U.S. 445, 452 [2 S.Ct. 561, 27 L.Ed. 537]; *Western Tie & Timber Co.* v. *Brown,* 196 U.S. 502 [25 S.Ct. 339, 49 L.Ed. 571]; *Alvord* v. *Ryan,* 212 F. 83, 85 [128 C.C.A. 539]; *Sperb* v. *McCoun,* 110 N.Y. 605 [18 N.E. 441, 1 L.R.A. 490]; *Topas* v. *John MacGregor Grant, Inc.,* 18 F.2d 724, 52 A.L.R. 807; see Bogert, The Law of Trusts and Trustees, § 812, p. 2354; 47 Am.Jur., Setoff and Counterclaim, § 51.)

If defendants were trustees of the premiums collected, they would therefore be obligated to remit them, deducting only commissions earned thereon as provided in the agency agreement. With respect to all claims not allowed as deductions from the premiums to be remitted, they would have to seek satisfaction from Union's insolvent estate as general creditors. It must therefore be determined whether defendants' contention that their trusteeship established in the agency agreement was abolished, is sustained by the following finding: "At all times after October 1, 1931, to the knowledge of said Union Indemnity Company, and with its consent, all collections made by Edward Brown & Sons on account of premiums or otherwise, as agent of Union Indemnity Company or for Union Indemnity Company were deposited by Edward Brown & Sons in its own bank account or bank accounts unsegregated from other funds . . . and all settlements between Edward Brown & Sons and Union Indemnity Company were made on a net cash basis. In respect to all moneys due to Union Indemnity Company from Edward Brown and Sons the relation . . . was that of debtor and creditor and with the knowledge and consent of Union Indemnity Company, Edward Brown & Sons never collected or held any moneys paid as or for premiums on any policy of Union Indemnity Company as a trust fund; and, in this respect the contract of the parties was modified and said modification was fully performed . . . Prior to January 6, 1933, it was agreed

between Edward Brown & Sons and Union Indemnity Company that the relationship between Union Indemnity Company on account of premiums on its policies and bonds collected by and paid to Edward Brown & Sons should be that only of a debtor and creditor and that Edward Brown & Sons should not be required to keep any moneys paid to it on account of premiums segregated or as trust funds or as fiduciary funds and that the only obligation or duty of Edward Brown & Sons in respect to any money so received should be a personal obligation to pay monthly to Union Indemnity Company the balance, if any, due after allowing credit to Edward Brown & Sons for funds expended by it on behalf of Union Indemnity Company, including return premiums paid on account of cancellations, and, on January 6, 1933, said agreement was fully performed.''

This finding includes the finding of certain probative facts and the conclusion that these facts are sufficient under the law to create a contract. (See *Baumgartner* v. *United States*, 322 U.S. 665 [64 S.Ct. 1240, 1243, 88 L.Ed. 1525]; Holmes, The Common Law, 115; Green, *Mixed Questions of Law and Fact*, 15 Harv.L.Rev. 271, 272; Paul, *Dobson* v. *Commissioner: The Strange Ways of Law and Fact*, 57 Harv.L.Rev. 753, 822.)

■ ''It is, of course, well settled that a general and ultimate finding . . . which is drawn as a conclusion from facts previously found, cannot stand if the specific facts upon which it is based do not support it'' (*McKay* v. *Gesford*, 163 Cal. 243, 246 [124 P. 1016, Ann.Cas. 1913E 1253, 41 L.R.A.N.S. 303]) that is, if the probative facts are not susceptible of a construction that will support the judgment. (*Quinn* v. *Rosenfeld*, 15 Cal.2d 486, 491 [102 P.2d 317]; *Matter of Forrester*, 162 Cal. 493, 495 [123 P. 283]; *People* v. *McCue*, 150 Cal. 195, 198 [88 P. 899]; *Hammond Lbr. Co.* v. *Barth Invest. Corp.*, 202 Cal. 606, 609 [262 P. 31]; *Loud* v. *Luse*, 214 Cal. 10, 12 [3 P.2d 542]; *Fitzpatrick* v. *Underwood*, 17 Cal.2d 722, 727 [112 P.2d 3].)

■ Nowhere in its findings has the trial court included probative facts that would indicate that Union and Brown ever modified the agency agreement by an express contract substituting a creditor and debtor relationship for the fiduciary relationship contemplated by the agency agreement. There is no reference to any writing or to any circumstances

under which any other express contract might have been made between the parties. The probative facts that are stated in the finding, namely, that with the knowledge and consent of Union, Brown deposited all money collected on behalf of Union in its own bank account or bank accounts unsegregated from other funds, and that all settlements between Brown and Union were made on a net cash basis, relate to the conduct of Brown in performing the contract. When the finding is read as a whole and in connection with defendant's answer to the complaint* (*Zeibak* v. *Nasser,* 12 Cal.2d 1, 15 [82 P.2d 375]; *Kohner* v. *National Surety Co.,* 105 Cal.App. 430, 440 [287 P. 510]; *Dam* v. *Zink,* 112 Cal. 91, 93 [44 P. 331]), it is clear that the agreement therein referred to was an implied contract. It must therefore be determined whether the probative facts are susceptible of a construction that will support the finding of an implied contract. ▆ Before a contract modifying a written contract can be implied, the conduct of the parties according to the findings of the trial court must be inconsistent with the written contract so as to warrant the conclusion that the parties intended to modify the written contract. (*Columbia Casualty Co.* v. *Lewis,* 14 Cal.App.2d 64, 72 [57 P.2d 1010]; *Harbor Const. Co.* v. *Walters,* 101 Cal. App. 470, 478 [281 P. 1062].) ▆ The fact that the settlements between Brown and Union were made on a net cash basis does not warrant the conclusion that the parties intended to modify the agency agreement, for the settlements were in accord with the provisions of that agreement that remittance

*Paragraph VII of defendants' answer alleged: "At all times mentioned in the complaint and herein during which EDWARD BROWN & SONS acted as agent in respect to Union Indemnity Company under the agreement Exhibit 'A' (Original Agency Agreement) to the complaint, it acted as such and under said agreement only as the same is modified by Exhibit 'A' hereto and as modified (among other respects) as next hereinafter alleged, that is to say:

"At all times after October 1, 1931, to the knowledge of Union Indemnity Company and with its consent all collections on account of premiums made by EDWARD BROWN & SONS were deposited by EDWARD BROWN & SONS in its own account or accounts and the same were not kept segregated, and all settlements between EDWARD BROWN & SONS and Union Indemnity Company were made on a net cash basis, and at all of said times in respect of all moneys due to Union Indemnity Company by agreement of EDWARD BROWN & SONS and Union Indemnity Company the relationship between EDWARD BROWN & SONS and Union Indemnity Company as to any moneys due to Union Indemnity Company from EDWARD BROWN & SONS was that of debtor and creditor. The relationship and modification as aforesaid was and has been fully performed."

by the agent was to be made on the basis of business written after credit for cancellations with "the privilege of deducting commissions which are debts due the agent" which "if granted, shall not be taken as a waiver by the company of its exclusive ownership of all premiums." The depositing by Brown with Union's knowledge and consent of all collected premiums in Brown's own bank account unsegregated from Brown's own funds was also consistent with Brown's fiduciary duties under the agency agreement. ■ It is settled as to both express trusts and trusts created by operation of law that an ascertainable interest in a bank account of the trustee in which funds of the trustee and of the beneficiary are deposited constitutes an asset definite enough to be the subject matter of a trust. (*Corley* v. *Hennessy,* 58 Cal.App.2d 883, 885 [137 P.2d 857]; *Kobida* v. *Hinkelmann,* 53 Cal.App.2d 186, 193 [127 P.2d 657]; *Mitchell* v. *Dunn,* 211 Cal. 129, 136 [294 P. 386]; *Noble* v. *Noble,* 198 Cal. 129, 134 [243 P. 439, 43 A.L.R. 1235]; *Estate of Arms,* 186 Cal. 554, 562 [199 P. 1053]; *Elizalde* v. *Elizalde,* 137 Cal. 634, 635, 641 [66 P. 369, 70 P. 861].) The fact that the amount to be remitted by defendants was a net balance different from the amount held in trust did not invalidate the trust, for funds may be held in trust to secure payment of an amount different from the total of the trust funds. The written agency agreement must therefore be regarded as controlling, for written contracts cannot be set aside and implied agreements substituted therefor if the conduct of the parties was not clearly contrary to the terms of the written contract. (*Columbia Casualty Co.* v. *Lewis,* 14 Cal.App.2d 64, 72 [57 P.2d 1010]; *Houghton* v. *Lawton,* 63 Cal.App. 218, 223 [218 P. 475]; see 4 Cal.Jur. Ten-year Supp. (1943 Rev.) 164; 94 A.L.R. 1278.) Since the probative facts on which the ultimate finding is based is not susceptible of the construction that there was an implied agreement modifying the written contract, they do not support the trial court's finding that there was an implied agreement.

■ Defendants also contend that plaintiff's claim is defeated by the following finding: "It is true that prior to January 6, 1933 defendant Edward Brown & Sons received moneys . . . as and for premiums . . . written in the months of October through December 1932, inclusive. It is not true that after deducting therefrom all return premiums on poli-

cies and/or bonds cancelled prior to January 6, 1933, and all commissions earned thereon, defendant Edward Brown held or still holds any sum belonging to Union Indemnity Company or owned by plaintiff herein or owed or owes Union Indemnity Company or plaintiff herein any sum or that said defendant, after January 6, 1933, or now, holds or held any money or thing belonging to Union Indemnity Company or plaintiff or owes any sum to Union Indemnity Company or plaintiff. After January 12, 1933, defendant Edward Brown & Sons received money which was the equivalent of a portion of premiums on policies and bonds in effect on January 6, 1933. It is not true that after deducting therefrom all commissions earned, Edward Brown & Sons holds any sum which was the property of Union Indemnity Company or any sum which is now vested in or owned by plaintiff or owed or owes Union Indemnity Company or plaintiff any sum . . . Any and all sums collected by Edward Brown & Sons for or on behalf of Union Indemnity Company and any and all sums at any time due from Edward Brown & Sons to Union Indemnity were paid by Edward Brown & Sons to Union Indemnity Company. . . .''

Even if it is assumed that this is a finding of fact rather than a conclusion of law, it must be read in conjunction with finding XVII, defining unearned premiums and excluding such premiums from Union's claims against Brown, and it is then clearly apparent that the court found that Union was entitled only to the ''earned portion'' of the premiums, namely that portion covering the period ending January 6, 1933. The basis of this finding is that Union had no right to remittance by the agent of any portion of the premiums paid by the insured to Brown allocable to the time after Union ceased to do business. In passing upon plaintiff's motion for a new trial, the trial court stated that the case was decided on the theory that when Union went into liquidation in Louisiana the funds in the hands of Brown ''were frozen, and that it was his duty upon the termination of the contracts in the liquidation proceedings to return the money to the various insureds, over and above the amount of the earned premiums.'' This theory is erroneous. It is not supported by section 2344 of the Civil Code providing: ''If an agent receives anything for the benefit of his principal, to the possession of which another person is entitled, he must, on demand, surrender it to such person, or

so much of it as he has under his control at the time of demand, on being indemnified for any advance which he has made to his principal, in good faith, on account of the same; and is responsible therefor, if, after notice from the owner, he delivers it to his principal.'' This rule entitles one who has paid money through fraud or mistake to an innocent agent to recover from him, unless the agent has turned over the money to his principal or otherwise changed his position. (*Weiner* v. *Roof*, 19 Cal.2d 748, 752 [122 P.2d 896].) In the present case, however, the insured sought to recover back premiums on the ground not of fraud or mistake, but of the breach of contract that Union committed when it allowed itself to be declared insolvent. (*Caminetti* v. *Pacific Mutual Life Ins. Co.*, 23 Cal.2d 94, 102 [142 P.2d 741]; see *Federico M. Mfg. Co.* v. *Great Western F. Ins. Co.*, 173 La. 905 [139 So. 1, 79 A.L.R. 1256].) There was no breach until Union was declared insolvent. Until that time Union functioned as an insurance company, covering losses of its insureds. Only upon the entry of the order directing its liquidation did Union's liabilities toward its creditors and claims against its debtors become fixed. (2 Deering's Gen. Laws, 1931, Act 3739, § 4.) A suit to recover money paid to an agent upon the ground that the contract was subsequently breached by the principal must be brought against the principal and not against the agent. The alleged breach of contract does not retroactively affect the lawfulness of the payment and its receipt by the agent at the time when it was made. (*Bleau* v. *Wright*, 110 Mich. 183 [68 N.W. 115]; *Finnegan* v. *Geoghegan*, 111 N.Y.S. 656; *Tripple* v. *Littlefield*, 46 Wash. 156 [89 P. 493]; *Cooper* v. *Tim*, 16 Misc. 372 [38 N.Y.S. 67]; *Huffman* v. *Newman*, 55 Neb. 713 [76 N.W. 409]; *Wright* v. *Merritt Realty Co.*, 148 Wash. 380 [268 P. 873]; *Bank of United States* v. *Bank of Washington*, 6 Pet. (31 U.S.) 8, 17 [8 L.Ed. 299]; see 3 C.J.S. 128; 2 Am.Jur., Agency, § 340; 23 L.R.A.N.S. 558; 1 Mechem on Agency, (2d ed.), § 1482, p. 1102; 82 A.L.R. 307; *cf. Pancoast* v. *Dinsmore*, 105 Me. 471 [75 A. 43, 134 Am.St.Rep. 582]; *Cassimus* v. *Vaughn Realty Co.*, 217 Ala. 561 [117 So. 180]; *Smith* v. *Binder*, 75 Ill. 492.) Moreover, a claim under section 2344 against the agent is limited to what the claimant is entitled to demand from the principal. Since Union became insolvent, the insureds were entitled to participate only in the dividend payable out of the insolvent

estate to general creditors. This court could not recognize a claim for full satisfaction by the agent to whom the premium was paid without creating a preferential right for those insureds who happened to pay their premiums to an agent at the expense of all other creditors, including the other insureds. The creation of such a preferential right would go beyond the purpose of section 2344, which is to avoid circuity of action rather than to enlarge the scope of the recovery to which the claimant is entitled against the principal. After the appointment of a liquidator, who may take possession of all assets of the insolvent insurance company, it was the duty of the agent to remit funds in his hands to the liquidator for the purposes of liquidation.

The question remains whether defendants' claim for compensation for services rendered from October 1, 1932, to January 12, 1933, which forms one of the items of the computation in question, should be upheld. The trial court found that the reasonable value of such services, which were not compensated, was in excess of $20,000. The services include Brown's activities relative to the writing of policies before Union was declared insolvent, for which Brown did not obtain the commissions due because Union's insolvency intervened. Other uncompensated services relate to policies cancelled by the insureds before Union was declared insolvent, cancellations which defendants claim occurred, not in the ordinary course of business, but because Union's financial status was already disrupted. The question whether compensation is owed for these services is a question of law. Insolvency of an insurance company is as much a breach of contract with the agents as with the insureds. (See *Caminetti* v. *Pacific Mutual Life Ins. Co., supra.*) Insofar as Brown was deprived by Union's insolvency of commissions for policies written and not cancelled, Brown is entitled to compensation equal to the commissions as damages for the breach of contract committed by Union. Recognition of this claim does not include the recognition of any claim of the agent based on the loss of business for the time after Union's insolvency. No such claim is submitted on this appeal. There was, however, no breach of contract on the part of Union as to policies and bonds already cancelled when Union was declared insolvent. Brown assumed the risk under the agency agreement of losing compensation because of cancellations.

Plaintiff has attacked as unintelligible the finding containing the computation of the claims of the parties. Since we do not approve the theories of the trial court underlying this computation, it would serve no useful purpose to inquire into the intelligibility of the finding, for it will not stand in the way of the trial court upon the retrial of the case.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., and Carter, J., concurred.

SCHAUER, J.—I dissent. This is a judgment roll appeal. We do not know what evidence was before the trial court. As shown in the findings of fact (quoted more fully in the majority opinion) the trial court found, among other things, that "Prior to January 6, 1933, it was agreed between Edward Brown & Sons and Union Indemnity Company that the relationship between Union Indemnity Company on account of premiums on its policies and bonds collected by and paid to Edward Brown & Sons should be that only of a debtor and creditor and that . . . the only obligation or duty of Edward Brown & Sons in respect of any money so received should be a personal obligation to pay monthly to Union Indemnity Company the balance, if any, due after allowing credit to Edward Brown & Sons for funds expended by it on behalf of Union Indemnity Company, including return premiums paid on account of cancellations, and, on January 6, 1933 said agreement was fully performed."

The above quoted finding, standing alone, fully supports the judgment insofar as concerns that phase of the case upon which the majority opinion bases the reversal. To escape or overcome the effect of this finding of ultimate facts the majority opinion relies upon the proposition that (a) certain probative facts were found which, it holds, do not necessarily establish such ultimate facts and that (b) the findings do not set forth *other* probative facts which would establish such ultimate facts. From that proposition the inference is drawn, or presumption indulged, *in favor of reversing the judgment,* that no evidence was produced sufficient to support the finding of ultimate facts. I do not find such inference or presumption tenable upon the record before us.

It has been sound and long-established law, which I deplore

seeing disturbed, that "In reviewing the sufficiency of the findings to support the judgment, regard will be had to the ultimate facts found, and not to mere probative facts, which are not shown by the findings to be the only facts proved, and from which alone the court finds the ultimate facts. In the absence of such showing, the mere circumstance that some of the probative facts are inconsistent with the ultimate facts will not prevent the ultimate facts from controlling" (2 Cal. Jur. 872-873, § 511) and "an appellate court in reviewing the findings will give them a liberal construction in support of the judgment." (*Id.*, p. 871.)

Here, the probative findings on which the majority relies to overcome the finding of ultimate facts are inadequate to that end. They may be insufficient in themselves to establish the ultimate facts but they are not inconsistent with them and do not preclude the existence of evidence which would support the finding of ultimate facts. "Any uncertainties in the findings are to receive such construction as will uphold rather than defeat the judgment" (2 Cal.Jur. 871, § 511) and upon a judgment roll appeal it will be presumed that competent evidence sufficient to sustain the findings was received without objection and "that there was no evidence before the court which in any respect qualified or limited the effect of the findings." (2 Cal.Jur. 877-878, § 514.) See, also, *Carpenter* v. *Froloff* (1939), 30 Cal.App.2d 400, 407 [86 P.2d 691]; *Stiles* v. *Bodkin* (1941), 43 Cal.App.2d 839, 840 [111 P.2d 675]; *Lamanet* v. *Lamanet* (1937), 18 Cal.App.2d 402, 405 [63 P.2d 1195]; *Whitney* v. *Redfern* (1940), 41 Cal.App. 2d 409, 413 [106 P.2d 919].

In the last cited case it was held that "Upon an appeal on the judgment roll alone, only the ultimate facts found by the court, not the probative facts which have no proper place in the findings, can be considered, and it is only in those cases where it clearly appears that the ultimate fact found is based upon and *ed*duced from the findings of probative facts, and it is plain that the latter do not justify nor support the ultimate fact found, that the findings of probative facts will control that of the ultimate fact, and so deprive the judgment of support."

In *Perry* v. *Quackenbush* (1894), 105 Cal. 299, 305 [38 P. 740], this court held that "Findings of probative facts will not, in general, control, limit, or modify the findings of the

ultimate fact. The province of the trial court is to find the ultimate facts, and not probative facts. If, from a consideration of the probative facts, this court should determine that they did not justify the finding of the ultimate fact it would determine that the evidence was insufficient to justify the decision. This, it has been repeatedly held, cannot be done in this mode." (See, also, *Breeze* v. *International Banking Corp.* (1914), 25 Cal.App. 437, 443 [143 P. 1066]; *Pio Pico* v. *Cuyas* (1873), 47 Cal. 174, 178.)

The finding of ultimate facts in the record here appears to fully support the judgment. Since the findings do not preclude the existence of evidence to support the ultimate facts and do not establish probative facts which are essentially inconsistent with the ultimate facts found it seems to me that consideration for sound administration of justice demands that we affirm the judgment.

Edmonds, J., concurred.

Respondent's petition for a rehearing was denied January 22, 1945. Edmonds, J., Schauer, J., and Spence, J., voted for a rehearing.